2006 WY 124

**Bruce G. BOYLE, Appellant (Defendant),**

v.

**Renee R. BOYLE, Appellee (Plaintiff).**

No. 05–258.

Supreme Court of Wyoming.

Sept. 29, 2006.

Representing Appellant: Mary A. Throne and Brandi L. Monger of Hickey & Evans, LLP, Cheyenne, Wyoming. Argument by Ms. Monger.

Representing Appellee: Kathryn J. Edelman of Edelman Law Office, Gillette, Wyoming.

Before VOIGT, C.J., and GOLDEN, HILL *, KITE, and BURKE, JJ.

KITE, Justice.

[¶1] Bruce Boyle (Husband) appeals from the property disposition in the decree granting Renee Boyle's (Wife) complaint for divorce. Husband asserts the district court erred by classifying his employment benefits, including banked hours, vacation hours, and sick leave, as marital property. He also claims the district court abused its discretion in dividing the parties' property. We conclude the issue of whether Husband's employment benefits were marital property was not properly presented to the district court and, therefore, decline to consider his argument on appeal. Further, we find no abuse of discretion in the district court's division of property.

[¶2] Affirmed.

## ISSUES

[¶3] Husband states the following issues on appeal:

Was it proper for the district court to consider banked hours, vacation hours and sick hours as marital property?

Did the district court abuse its discretion in the property division set forth in the judgment and decree of divorce?

Wife does not set forth a separate statement of issues on appeal.

## FACTS

[¶4] Husband and Wife were married on September 9, 1994, in Rapid City, South Dakota. Husband was a pilot employed by Northwest Airlines. Wife also worked for Northwest Airlines, first as a gate agent and later as a flight attendant. Husband earned significantly more than Wife during the marriage.

[¶5] The parties each owned a home prior to their marriage, but they sold their individual properties and placed the proceeds in their joint accounts. They used their joint funds to purchase property and build a new home in Aladdin. The parties also mortgaged the Aladdin property and borrowed against their 401(k) retirement accounts and from family members to fund the building project.

[¶6] After several years of marriage, the parties' relationship deteriorated, culminating in Wife's claim Husband was engaged in an extramarital relationship with another woman. Wife moved out of the parties' Aladdin residence in July 2004. Approximately three weeks later she moved back into the house, but the parties' relationship did not improve. Over the course of the next several months, there were arguments which apparently escalated to physical violence on a couple of occasions.

[¶7] On December 9, 2004, Wife filed a complaint for divorce and a motion for exclusive possession of the marital residence. Husband answered the complaint, and the parties agreed to a temporary arrangement wherein Husband would have possession of the marital residence and would pay Wife $2,500 per month in spousal support while the divorce proceedings were pending. The court also ordered Husband to pay other expenses, including the mortgage payments and vehicle expenses.

[¶8] The district court held a trial on May 25, 2005. Both parties testified at the trial, and the district court ordered them to prepare written submissions for the court's consideration in issuing its final decree. After the parties filed their written submissions, the district court issued a decision letter outlining its basic property distribution and indicating it generally adopted Wife's proposed distribution of the property. The court subsequently entered a judgment and divorce decree, and Husband appealed.

---

* Chief Justice at time of oral argument.

## STANDARD OF REVIEW

■ [¶ 9] Wyo. Stat. Ann. § 20–2–114 (LexisNexis 2005) sets out the statutory requirements for disposition of a couple's property in a divorce. That statute provides, in relevant part:

In granting a divorce, the court shall make such disposition of the property of the parties as appears just and equitable, having regard for the respective merits of the parties and the condition in which they will be left by the divorce, the party through whom the property was acquired and the burdens imposed upon the property for the benefit of either party and children. The court may decree to either party reasonable alimony out of the estate of the other having regard for the other's ability to pay and may order so much of the other's real estate or the rents and profits thereof as is necessary be assigned and set out to either party for life, or may decree a specific sum be paid by either party.

*See also, Wallop v. Wallop,* 2004 WY 46, ¶ 26, 88 P.3d 1022, 1030 (Wyo.2004); *Hall v. Hall,* 2002 WY 30, ¶¶ 11–12, 40 P.3d 1228, 1229–30 (Wyo.2002). The trial court has the discretion to determine what weight should be given each of the individual statutory factors. *DeJohn v. DeJohn,* 2005 WY 140, ¶ 13, 121 P.3d 802, 808 (Wyo.2005). *See also, Wallop,* ¶ 26, 88 P.3d at 1030.

■ [¶ 10] We expansively discussed the "just and equitable" requirement and our standard for reviewing property disposition decisions in *Sweat v. Sweat,* 2003 WY 82, ¶ 6, 72 P.3d 276, 278 (Wyo.2003):

A just and equitable distribution is as likely as not to be unequal. [*Carlton v. Carlton,* 997 P.2d 1028, 1032 (Wyo.2000)]. We evaluate whether the trial court's property division is, in fact, equitable from the perspective of the overall distribution of marital assets and liabilities rather than from a narrow focus on the effects of any particular disposition. *Id.* From that perspective, we afford the trial court considerable discretion to form a distributive scheme ap-

propriate to the peculiar circumstances of each individual case, and we will not disturb such a scheme absent a showing that the trial court clearly abused its discretion. *Id.* The division of property in a divorce case should not be disturbed except on clear grounds as the trial court is usually in a better position than the appellate court to judge the parties' respective merits and needs. *Metz v. Metz,* 2003 WY 3, ¶ 6, 61 P.3d 383, ¶ 6 (Wyo.2003). The trial court is also in the best position to assess the witnesses' credibility and weigh their testimony. *Raymond v. Raymond,* 956 P.2d 329, 332 (Wyo.1998). We, therefore, give considerable deference to its findings. *Id.* The ultimate question in determining whether an abuse of discretion occurred is whether the trial court could reasonably conclude as it did. *Metz,* 2003 WY 3, ¶ 6, 61 P.3d 383. In answering that question, we consider only the evidence of the successful party, ignore the evidence of the unsuccessful party, and grant the successful party every favorable inference that can be drawn from the record. *Holland v. Holland,* 2001 WY 113, ¶ 8, 35 P.3d 409, ¶ 8 (Wyo.2001).

*See also, Houx v. Houx,* 2006 WY 102, 140 P.3d 648 (Wyo.2006). As with any appeal, the district court's conclusions of law are reviewed *de novo. Maher v. Maher,* 2004 WY 62, ¶ 6, 90 P.3d 739, 741 (Wyo.2004).

## DISCUSSION

### A. Employment Benefits

[¶ 11] Husband claims the district court erred by including certain employment benefits he had accumulated as a pilot for Northwest Airlines in its distribution of the parties' marital property. In particular, he claims his banked hours,[1] vacation hours, and accumulated sick leave were not marital property subject to distribution. The district court awarded the employment benefits to Husband and included their value in his part of the marital estate. The gist of Husband's argument is that, if he would not have been

---

1. Husband explained he earned "banked hours" in his pilot position. The banked hours were used if he did not work his maximum number of

hours in a pay period so that he could get a full paycheck for that pay period.

credited with those values, he would have received a larger portion of the marital estate.

[¶ 12] The parties reached an agreement as to the disposition of most of their property. Thus, at trial they focused on approximately thirty items still in dispute, either because the parties could not agree on who should get the property and/or what value should be assigned to the property. Those items were identified in a joint exhibit admitted into evidence at trial. The joint exhibit was a spreadsheet with columns entitled: Property Description, Property Values (including separate spaces for Wife's values and Husband's values), Party Requesting Property (including spaces marked with an "x" to indicate if Wife wanted the property and/or if Husband wanted the property), Court Assignment (with separate spaces marked "To P($)" and "To D($)),", and a column entitled "Notes." Husband's employment benefits were shown as items numbered 455, 456 and 457 on the joint exhibit. Item 455 was described as NWA banked hours pay. The joint exhibit indicated Wife placed a value of $1,327 on the banked hours. Husband's value column contained a question mark. Neither party marked the columns indicating they were requesting the item. Item 456 was Husband's sick leave which Wife valued at $264,060. The "Notes" column indicates Wife's value was calculated by multiplying 1467 accumulated hours by an hourly rate of $180. Husband's value column contained a question mark, and neither party marked the column indicating he or she was requesting the item. Item 475 was Husband's vacation pay. Wife assigned a value of $18,817 to Husband's vacation pay, and the "Notes" column indicates she calculated the value by multiplying 104.54 hours at $180 per hour. As with the other two items, Husband's value column simply contained a question mark and neither party requested the item.

[¶ 13] At the trial, there was no testimony concerning these three assets except Wife's answers on cross-examination:

Q. [Wife], you didn't testify about your entries on lines 455, 456 and 457. . . .

\* \* \*

A. Those are all [Husband's] and I don't dispute that.

Q. So you're not making any claim to those?

A. No, ma'am, no.

[¶ 14] At the conclusion of the trial, the district court asked the parties to submit proposed decrees. Husband's proposed decree did not address the employment benefits at all. Wife submitted a written closing argument together with a revised version of the joint exhibit presented at trial, outlining her proposed property division. Husband's employment benefits were included in Wife's proposed property division in essentially the same form as in the joint exhibit, except Wife assigned them to Husband for "value." Husband did not respond to Wife's submission and the district court issued a decision letter setting forth its general rulings with regard to the parties' property. The decision letter stated the district court generally adopted Wife's proposed property distribution and debt allocation summary.

[¶ 15] In response to the decision letter, Husband filed a list of questions with the district court. Question No. 2 stated: "Should items 455, 456 and 457 on Plaintiff's proposed property summary be addressed in the Decree? [Wife's] testimony and the spreadsheet are inconsistent as she indicated she was not seeking these "assets" yet they are included." Wife's attorney responded, by e-mail, to Husband's question:

I write to clarify what I believe to be a misperception contained in Ms. Day's letter of July 28, 2005.

[Wife]did testify that she was not seeking the assets listed at lines 455, 456 and 457 of the Joint Exhibit. Her testimony was designed to indicate her knowledge that Northwest Airlines would not transfer those assets to her, regardless of any contrary order. She cannot have those assets and is not requesting that they be set over to her. That, of course, is entirely different from saying that the assets should not be valued and set over to [Husband], which is what we requested.

She subsequently sent another e-mail to clarify her position, stating: "I just reread my earlier e-mail to you and think that I have

created more confusion than clarity. It was [Wife's] position that the assets at lines 455, 456 and 457 be set over to [Husband] at the values shown on the Joint Exhibit." The district court responded as follows: "Items 455, 456 and 457 are to be valued in their entirety. The court adopts [Wife's] position as to these items." Husband did not object to the district court's ruling.

[¶ 16] On appeal, Husband argues, as a matter of law, his employment benefits are not marital property As Husband points out, this Court has never before directly considered whether employment benefits are marital property. He claims, however, under the rationale of *Storm v. Storm*, 470 P.2d 367 (Wyo.1970), his employment benefits amount to nothing more than a future expectancy and, therefore, should not have been included in the marital estate.

[¶ 17] In *Storm*, we ruled a spouse's inheritance, which did not mature until several months after the divorce action had been filed, should not be included in the marital estate. Id. at 370–71. Husband also cites to cases from other jurisdictions addressing whether employment benefits are includable as part of the marital estate and points out there is a split among other jurisdictions on the issue. *See e.g., Thomasian v. Thomasian*, 79 Md.App. 188, 556 A.2d 675 (1989) (holding holiday and vacation time was not a marital asset); *Schober v. Schober*, 692 P.2d 267 (Alaska 1984) (holding unused personal leave was a marital asset). He claims we should adopt the position that, because accrued employment benefits are a form of alternative wages, they should not be included in the marital estate.

[¶ 18] Husband may be correct in his legal analysis; however, this is not the right case to make that determination because he provided no evidence at trial concerning the nature of these benefits and/or whether they had present value.[2] In addition, he did not argue in the district court that, as a matter of law, his employment

benefits were nothing more than expectancy under the *Storm* decision or that they were not marital property. Although his assigned value for the employment benefits was denoted with a question mark, the joint exhibit was intended to describe the property still in dispute and gave no indication Husband disagreed with treatment of those items as marital assets. This is in contrast to other items in the joint exhibit which Husband clearly claimed were "premarital" or "inherited" items and not marital assets. Because there is no evidence in the record about whether his employment benefits have cash value and Husband did not argue his employment benefits were not marital assets to the district court, there is no basis for us to decide his claim.

This court has long held that issues not brought before the district court may not be reviewed on appeal. "We 'strongly adhere to the rule forbidding us to "consider for the first time on appeal issues that were neither raised in, nor argued to, the trial court," except for those issues which are jurisdictional or are fundamental in nature.' " *Donaghy v. Board of Adjustment*, 2002 WY 150, ¶ 11, 55 P.3d 707, ¶ 11 (Wyo.2002) (quoting *Bredthauer v. TSP*, 864 P.2d 442, 446 (Wyo.1993) and *Oatts v. Jorgenson*, 821 P.2d 108, 111 (Wyo.1991)).

*Wallop*, ¶ 47, 88 P.3d at 1034. In order to decide this issue on the merits, the case would have to be remanded to the district court for an evidentiary hearing. That would give Husband a proverbial "second bite at the apple." Husband is not entitled to a second opportunity to present this issue to the district court; consequently, we decline to consider whether employment benefits such as those in dispute in this matter, are, as a matter of law, marital property subject to disposition in a divorce.

[¶ 19] Husband also argues the evidence does not support attributing the value of the employment benefits to him. This argument is somewhat difficult to follow because he

2. There was some discussion at a pre-trial hearing on Husband's Motion for Relief from Temporary Alimony, about his employment benefits. At that hearing, Husband indicated his sick leave could be used to pay him if he missed work because he was ill. Contrary to Husband's assertion on appeal, there was no testimony about whether the sick leave or his other benefits had cash value upon termination of his employment.

falls back on his position that the employment benefits should not be included in the marital estate. To the extent this argument rehashes his first argument, we decline to consider it.

[¶ 20] Husband also submits a factual argument the employment benefits have no "cash value" to him. In other words, he insists he is only to be allowed to use the benefits to compensate him for time he actually takes off work but he is not entitled to be paid in cash for his benefits when his employment terminates. The record does not, however, support Husband's assertion because it contains no evidence as to if or when Husband was entitled to cash out his employment benefits. On the other hand, the record does contain evidence about the value of the employment benefits. The joint exhibit clearly showed his accrued employment benefits and rate of pay, and Husband does not claim those values are incorrect.[3] Based upon the record before us, the district court properly valued the benefits when it set them over to Husband[4].

### B. Property Division

[¶ 21] Husband argues the district court abused its discretion when it divided the parties' marital property. Applying a "shot-gun" approach, Husband takes issue with the district court's disposition of many of the individual property items and allocation of certain debts. In reviewing Husband's contentions, we must keep in mind "a primary question that must be answered in a review such as this is whether or not the evidence adduced at trial supports the property division as a whole, not necessarily each individual part of it." *DeJohn*, ¶ 15, 121 P.3d

at 808; *Holland v. Holland*, 2001 WY 113, ¶ 9, 35 P.3d 409, 412 (Wyo.2001).

[¶ 22] The largest asset of the marital estate was the Aladdin real property valued at $1,600,000. The district court awarded the real property to Husband, together with the mortgage debt on the property. In order to equalize the division of the marital estate, the district court ordered Husband to pay Wife $729,400, on or before September 30, 2006. Husband argues the district court failed to account for the costs of selling the real property, including commissions, listing fees and taxes, and the September 30, 2006, deadline was unreasonable for selling such a large and expensive piece of property.

[¶ 23] Husband's argument assumes he is required to sell the property. The district court specifically stated it was not ordering Husband to sell the property, but, in order to satisfy his debt to Wife, Husband "may have to choose between either selling the Crook County property or refinancing the same." Evidence was presented suggesting Husband could refinance the property if he chose to keep it. Furthermore, Husband presented no evidence about the costs associated with selling the property. With regard to the deadline for paying off Wife, the record shows the decision letter was dated July 15, 2005, more than a year prior to the September 30, 2006, deadline. On appeal, Husband makes the unsubstantiated claim he could not make arrangements to pay off the debt to Wife, either by selling or refinancing the property, within that period of time. Even if he could make that claim at this late date, the court's order made provisions for that possibility by requiring him to continue spousal support of $2,500 per month, not to

---

3. Other than the joint exhibit, the trial record does not contain evidence regarding the values of Husband's employment benefits. However, the values contained in the joint exhibit are shown on Husband's pay stubs which were admitted into evidence at a motion hearing held before trial. Both parties cite to this motion hearing to support their arguments about the employment benefits issue on appeal and, more importantly, Husband does not claim the values are incorrect.

4. Husband also includes a couple of statements in his brief, suggesting Wife waived her claim to

the employment benefits. Although this argument was briefly raised in the district court when Husband questioned the district court about its inclusion of the employment benefits in the marital estate in light of Wife's testimony that she did not make any claim to the employment benefits, he does not cite to any pertinent authority or present any cogent argument on appeal to support a claim of waiver. *See BP America Production Co. v. Dep't of Revenue*, 2006 WY 27, ¶ 25, 130 P.3d 438, 466 (Wyo.2006).

be credited against the judgment, until the debt was paid.[5]

 [¶ 24] Husband also claims the district court's decision failed to acknowledge his premarital assets and the relative contributions of each party to the marital estate. In particular, he asserts the district court did not account for his contribution of approximately $154,000 from the proceeds of the sale of his pre-marital home to the parties' Aladdin home or his premarital contributions to his retirement accounts. Husband contends, as well, the district court did not properly credit him for his greater income which allowed him to contribute more than Wife to the accumulation of the martial property.

[¶ 25] The record does not support Husband's assertion. The district court expressly considered the parties' contributions of premarital assets and the relative financial contributions of each party to the marital estate, together with the other statutory factors, and ruled as follows:

1. Both of the parties here appear to be intelligent, articulate individuals with some life experience prior to this marriage. As a consequence, concerns about relative premarital financial conditions could have been addressed in some type of prenuptial agreement, or in some other fashion. Rather, the parties here chose to substantially co-mingle and share their assets and go forward as one, apparently even prior to the time they were wed. While not singularly determinative of the outcome of this matter, the court has assigned this factor substantial weight.

2. While husband contributed in greater part to the financial condition of the parties, it appears that as a result of this marriage wife left a position that paid her significantly more than she is making now. Wife's testimony at trial was that early in the marriage husband encouraged her to move to Wyoming, and that move meant that she had to take a lesser paying position with her employer. Wife also testified that husband encouraged her to work less,

and rely on husband's income. The court finds wife's testimony highly credible and believes that wife made a substantial sacrifice of her earning potential by acceding to husband's wishes. The court acknowledges that while wife was more than likely a willing participant in this plan, ultimately the court must "make such disposition of the property of the parties as appears just and equitable having regard for the respective merits of the parties and the condition in which they will be left by the divorce ..." W.S. § 20–2–114. While quoting the foregoing statute in part, the court has not ignored the fact the relative financial situations of the parties as they entered this marriage, nor has the court ignored the fact that the husband was the primary income provider. What the court determines here is that given all of the facts and circumstances of this case the requirement that the court consider "the party through whom the property was acquired" is less significant given the way that the parties conducted themselves from the outset of this relationship.

Although Husband does not agree with the district court's ruling, the decision letter clearly demonstrates consideration of the proper factors. The court explicitly took into account both parties' premarital contributions and Husband's greater income during the marriage, but rejected Husband's argument that, as a result of those contributions, he was entitled to a greater share of the marital estate. Husband has failed to show the district court abused its discretion in making that determination.

[¶ 26] Husband asserts the district court erred by not specifying a total value for the marital estate or explaining how the $729,400 award to Wife was a just and equitable division and objects to the award of certain individual assets and debts to each party. For example, he challenges the award of the parties' dogs to Wife, disposition of the parties' retirement funds, and allocation of debts owed to each of their mothers. In making

5. Under the terms of the decree, Husband was ordered to pay $2,500 per month in spousal support. All timely payments made before the September 30, 2006, deadline were to be credited against the amounts he owed Wife. Once he satisfied the judgment, his spousal support obligation ceased.

these arguments, Husband misconstrues his obligation on appeal. As acknowledged by this Court in *Holland*, 35 P.3d at 412, a party contesting the district court's division of the property must demonstrate the evidence adduced at trial does not support the property distribution as a whole. The judge's decision letter stated it intended "that the positions of the parties ... be more or less equalized." Other than a general allegation the disposition was not proper, Husband does not explain why the equalization payment was not just and equitable or how the district court abused its discretion.

[¶ 27] Husband claims the district court's ruling was meant to punish him and reward Wife because of evidence he had an extra-marital affair. Of course, a judge may not use his discretion in dividing marital property to reward one party and punish the other. *See, e.g., McLoughlin v. McLoughlin*, 996 P.2d 5, 8 (Wyo.2000); *Paul v. Paul*, 616 P.2d 707 (Wyo.1980). In this case, however, there is no indication of any retribution. Indeed, the district court specifically stated it had no intent to punish Husband. The district court did refer to the extra-marital affair in its decision letter, but only in the context of ruling on the credibility of the parties. The court specifically stated Husband's testimony about his "paramour" was not believable. Consequently, the district court ruled: "the court finds the only logical path open to it is to resolve disputed matters involving credibility in favor of wife, and against husband." As we have acknowledged innumerable times, issues of credibility belong to the trial court. *See, e.g., Hall v. Hall*, 2005 WY 166, ¶ 7, 125 P.3d 284, 287 (Wyo. 2005); *Dunham v. Dunham*, 2006 WY 1, ¶ 6, 125 P.3d 1015, 1017 (Wyo.2006). Husband's claim the district court improperly applied its discretion to punish him is not supported by the record.

## CONCLUSION

[¶ 28] Because Husband failed to preserve the legal argument his employment benefits could not be considered as part of the martial property, we decline to consider

that issue. With regard to Husband's argument the district court abused its discretion in dividing the parties' marital property, "our statutory scheme for distribution of marital property requires our courts to consider the respective merits of the parties in forming a distributive scheme appropriate to the particular circumstances of each individual case." *Houx*, ¶ 18, 140 P.3d at 653. Husband has not demonstrated the district court failed to fulfill its statutory obligation in this case. We, therefore, find no basis on which to overrule the district court's decision and affirm.

BURKE, J., files a dissenting opinion.

BURKE, Justice, dissenting.

[¶ 29] I respectfully dissent. The district court ordered Husband to pay Wife $729,400 in order to "equalize the division of the marital estate." In arriving at the payment amount, the district court included $284,204 in employment benefits as assets of the marriage and awarded the assets to Husband. There is insufficient evidence to support the district court's valuation of the employment benefits and its finding that the employment benefits are marital assets.

[¶ 30] As mentioned by the majority, we have not had prior occasion to determine whether employment benefits of the type at issue are marital assets. It seems appropriate, as suggested by the majority, that in order for those benefits to be considered marital assets there must be evidence that the benefits are more than a substitute for wages. The majority correctly notes there is no evidence in the record indicating that the employment benefits had, or would have, any cash value. According to the majority, the absence of such evidence is fatal to Husband's appeal. I disagree.

[¶ 31] As Plaintiff, and the party asserting the claim, Wife had the burden of providing sufficient evidence at trial to support her claim. *Morrison v. Reilly*, 511 P.2d 970, 972 (Wyo.1973) ("burden of proof is on the party asserting the affirmative of any issue").[6] Husband and Wife were the only witnesses at trial. Wife testified first. She provided

6. Husband did not file a counterclaim.

testimony regarding most of the "items still in dispute" reflected in the joint exhibit but did not provide any testimony during direct examination regarding the employment benefits. During cross examination, Wife testified unequivocally that she was making no claim to the employment benefits. Wife's disavowal was the only testimony presented at trial regarding the employment benefits.[7]

[¶ 32] The joint exhibit provided the only other reference to the employment benefits at trial. The joint exhibit was identified by Wife's attorney as a list of "items still in dispute." There was no stipulation that the disputed items were marital assets. The exhibit clearly reflected that Husband disputed Wife's valuation of the employment benefits and contained no indication that Wife was requesting that the employment benefits be awarded to Husband.

[¶ 33] In light of Wife's stated position that she was making no claim to the benefits and the lack of any evidentiary support for valuation of the benefits, Husband's failure to provide any testimony or other evidence regarding the benefits is understandable and appropriate. Husband was under no obligation to provide any evidence regarding the benefits. Wife, not Husband, was required to prove the employment benefits were marital assets and the value of those assets.

[¶ 34] Perhaps recognizing that the trial record contains insufficient evidence, the majority relies upon evidence in the form of pay stubs admitted as exhibits at a motion hearing regarding temporary support held a month prior to trial. The trial record contains no indication that the parties stipulated that evidence produced at the motion hearing could be considered by the district court as trial evidence. More importantly, the pay records do not reflect that the employment benefits are anything other than a substitute for wages.

[¶ 35] The only testimony regarding sick pay appearing in the record was presented at the motion hearing where Husband testified as follows:

[Plaintiff's Counsel]: And with respect to sick where it shows 1467, colon, 37, what does that number mean?

[Defendant]: **That's if I'm sick they'll pay me.**

[Plaintiff's Counsel]: They'll pay you what, $1,467?

[Defendant]: 1,467 hours.

. . .

[Plaintiff's Counsel]: Okay. And back to Defendant's Exhibit 6, you think that the colon after the 1467, this number represents hours banked—or, well, not hours banked, I guess, but sick hours available to you, rather than dollar amount?

Sir, what I'm asking essentially is, is this like the banked time where you get up to $1467 worth of pay?

[Defendant]: No, 1467 is the pay hours.

[Plaintiff's Counsel]: **So if you were to be ill and off your job 1467 hours, then you'd be paid for those hours, correct?**

[Defendant]: **Right.**

(Emphasis added.)

[¶ 36] Similar testimony was presented at the motion hearing regarding the banked hours. Husband testified at the motion hearing that, if he failed to fly his "guaranteed hours," banked pay could be used to get a full pay check for the time period. No testimony was presented at either the motion hearing or the trial regarding vacation pay.

[¶ 37] Although, on appeal, we must review the evidence in the light most favorable to the prevailing party, in this case there was no evidence which supports the district court's valuation of the employment benefits as marital assets. Even if the joint exhibit and the pay stubs are construed as providing evidentiary support, review of the entire record leads to the inescapable conclusion that the district court's valuation of the employment benefits was clearly erroneous. "A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the

---

7. On redirect examination, Wife's attorney did not ask any questions in an effort to clarify Wife's position regarding the employment benefits. No questions were asked of Wife regarding valuation of the employment benefits. No exhibits were introduced providing evidentiary support for Wife's valuation of the benefits that was reflected in the "notes" column of the joint exhibit.

definite and firm conviction that a mistake has been committed." *Stroup v. Oedekoven,* 995 P.2d 125, 128 (Wyo.1999) (quoting *Springer v. Blue Cross and Blue Shield of Wyoming,* 944 P.2d 1173, 1176 (Wyo.1997)).

[¶ 38] No evidence was presented that the employment benefits had cash value or could be cashed out upon termination of Husband's employment. The only trial evidence directed to the issue is Wife's unqualified testimony that she was making no claim to the employment benefits. If evidence from the motion hearing is considered, it only supports a finding that the employment benefits are a wage substitute. Because Wife failed to meet her burden of proof, the finding of the district court that Husband's employment benefits are marital property worth $284,204 is clearly erroneous.

[¶ 39] I would reverse and remand to allow the district court to fashion an equitable property distribution without inclusion of the employment benefits as marital property.