# IN THE SUPREME COURT, STATE OF WYOMING

## 2013 WY 126

### OCTOBER TERM, A.D. 2013

_____

**October 11, 2013**

_____

ANGELA S. BAGLEY,

Appellant
(Plaintiff),

v.                                                      S-12-0276

CAMERON KDELL BAGLEY,

Appellee
(Defendant).


CAMERON KDELL BAGLEY,

Appellant
(Defendant),

v.                                                      S-12-0277

ANGELA S. BAGLEY,

Appellee
(Plaintiff).

_____

*Appeal from the District Court of Lincoln County*
The Honorable Dennis L. Sanderson, Judge

*Representing Appellant in Case No. S-12-0276:*
    Jack D. Edwards of Edwards Law Office, P.C., Etna, Wyoming.

*Representing Appellee in Case No. S-12-0276:*
    Bret F. King of King & King, LLC, Jackson, Wyoming.

*Before KITE, C.J., and HILL, VOIGT, BURKE, and DAVIS, JJ.*

**NOTICE:  This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of typographical or other formal errors so correction may be made before final publication in the permanent volume.**

**KITE, Chief Justice.**

[¶1]     The district court granted Angela S. Bagley (Wife) a divorce, divided the parties' property, determined child custody, and ordered Cameron Kdell Bagley (Husband) to pay child support.  Both parties appealed.  Wife claims the district court erred by refusing to award her child support for their adult disabled daughter because Wife was already receiving Social Security benefits for her.  She also argues the district court erred in determining Husband's net income for the purposes of calculating child support for the parties' two minor children.  Husband, on the other hand, contests the district court's division of the parties' property.

[¶2]     We affirm in part and reverse and remand in part.

## ISSUES

[¶3]     Wife presents the following issues on appeal:

> I.      Did the district court err[] in concluding that [Husband] had no obligation to personally provide support for his adult daughter who suffers from mental and physical disabilities?
>
> II.     Did the district court err[] in calculating [Husband's] net monthly income for purposes of calculating child support?

Husband asserts those aspects of the district court's rulings were correct, but queries:

> I.      Did the district court err and abuse its discretion in its division of marital property by awarding [Wife] a money judgment of $149,500?
>
> II.     Did the district court err and abuse its discretion by determining the value of the horseshoeing business to be $40,000?
>
> III.    Did the district court err when it failed to provide an appropriate schedule of payments on the money judgment award?

Wife contends the district court's division of the marital property was correct.

1

**FACTS**

[¶4]    The parties have been married twice and this appeal results from the second divorce action.  Over the course of their relationship, four children were born.  At the time of the divorce trial, the two older children were adults; however, the parties' adult daughter was disabled.  In a separate action, Wife was appointed the daughter's guardian and conservator, and she received $674 per month in Social Security benefits on behalf of the daughter.  The other two children were sixteen and nine years old, respectively.  The teenager had been splitting his time between his parents, and they agreed that arrangement should continue.  Wife sought primary residential custody of the youngest child, while Husband sought a shared custody arrangement.  There was also considerable disagreement between the parties as to the amount of Husband's net income for purposes of calculating child support and the value and proper distribution of marital property.

[¶5]    After a trial, the district court ruled that no child support was necessary for the adult daughter because she received Social Security benefits; the parties' arrangement regarding the teenager should continue; Wife should have primary custody of the youngest child; Wife was entitled to a few items of property and $149,500 as payment for her share of the remainder of the marital property and Husband's child support obligation was $751.50 per month based upon a finding that Husband's monthly net income was $5,333.  Both parties appealed.  We will provide additional facts in the discussion of the various issues below.

**STANDARD OF REVIEW**

[¶6]    In general, determinations concerning child support are left to the district court's sound discretion. *Verheydt v. Verheydt,* 2013 WY 25, ¶ 19, 295 P.3d 1245, 1250 (Wyo. 2013); *Witowski v. Roosevelt,* 2009 WY 5, ¶ 13, 199 P.3d 1072, 1076 (Wyo. 2009). Consequently, we will not disturb the district court's decision unless it abused its discretion.  "In determining whether an abuse of discretion occurred, our core inquiry is the reasonableness of the district court's decision."  *Verheydt,* ¶ 19, 295 P.3d at 1250; *Hanson v. Belveal,* 2012 WY 98, ¶ 14, 280 P.3d 1186, 1192 (Wyo. 2012).

[¶7]    "We will not disturb a property division in a divorce case, except on clear grounds, as the trial court is usually in a better position than the appellate court to judge the parties' needs and the merits of their positions." *Metz v. Metz,* 2003 WY 3, ¶ 6, 61 P.3d 383, 385 (Wyo. 2003), citing *Paul v. Paul,* 616 P.2d 707, 712 (Wyo. 1980); *Warren v. Warren,* 361 P.2d 525, 526 (Wyo. 1961).  If our review requires an evaluation of the sufficiency of the evidence to support the district court's decision, "we afford to the prevailing party every favorable inference while omitting any consideration of evidence presented by the unsuccessful party." *Reavis v. Reavis,* 955 P.2d 428, 431 (Wyo. 1998) (citations omitted).  When interpretation of statutory language is required to resolve an issue, our standard of review is *de novo. Egan v. Egan,* 2010 WY 164, ¶ 7, 244 P.3d

1045, 1048 (Wyo. 2010); *Dorr v. Smith, Keller & Assoc.,* 2010 WY 120, ¶ 11, 238 P.3d 549, 552 (Wyo. 2010).

## DISCUSSION

### A. Support for Disabled Adult Child Who Receives Social Security Benefits

[¶8] The parties' daughter was nineteen years old at the time of the trial. She suffers from autism with mild mental retardation and is, therefore, incapable of caring for herself. The daughter lived with Wife and was still in high school under an Individualized Education Program (IEP). Wife is her legal guardian and conservator and receives monthly Social Security benefits of $674. Wife requested child support for the daughter because the Social Security benefits did not cover all of her expenses, but Husband asserted she was provided for adequately. The district court ruled that the cost of the adult daughter's "care is provided through Social Security and will not be the subject of this Order."

[¶9] Wyo. Stat. Ann. § 14-1-101(a) (LexisNexis 2013) states: "Upon becoming eighteen (18) years of age, an individual reaches the age of majority and as an adult acquires all rights and responsibilities granted or imposed by statute or common law, except as otherwise provided by law." Pursuant to Wyo. Stat. Ann. § 20-2-313(a)(iv) (LexisNexis 2013), a parent's child support obligation terminates when the child reaches the age of majority. However, we have applied Wyo. Stat. Ann. § 14-2-204 (LexisNexis 2013) to order child support to continue after the age of majority in certain circumstances. Section 14-2-204 states in relevant part:

> (a) [A] parent's legal obligation for the support of his or her children, whether natural or adopted, continues past the age of majority in cases where the children are:
> > (i) Mentally or physically disabled and thereby incapable of self support; or
> > . . . .
> > (iii) Between the age of majority and twenty (20) years and attending high school or an equivalent program as full-time participants.

In *Cossette v. Cossette,* 2003 WY 107, ¶¶ 10-13, 76 P.3d 795, 797-98 (Wyo. 2003), we ruled that § 14-2-204 gave the district court authority to order a divorced father to continue paying child support for an adult child who was still attending high school. Consistent with *Cossette* and § 14-2-204, parents are obligated to continue to support a disabled adult child in accordance with the child support guidelines. *See also*, *Kamp v. Kamp,* 640 P.2d 48 (Wyo. 1982) (applying an earlier statute, this Court confirmed a general legislative intent to provide support for adult disabled children).

3

[¶10] The parties' nineteen year old daughter was entitled to support because she was both disabled and still attending high school. The question is how the Social Security benefits should be addressed in calculating the support, if at all. Wyo. Stat. Ann. § 20-2-307 (LexisNexis 2013) provides that the presumptive child support amount, as calculated under the child support guidelines in Wyo. Stat. Ann. § 20-2-304 (LexisNexis 2013), should apply unless there is a valid basis for deviation. Wife claims the district court, therefore, erred by failing to determine the presumptive child support amount from the guidelines and make findings to justify a deviation if appropriate. We agree that the plain language of the statutes requires the child support be calculated under the guidelines. The district court erred by failing to follow the procedure set out in the statutes.

[¶11] Wife also asserts § 20-2-307(d) (LexisNexis 2013) prohibits a deviation from the presumptive child support amount on the basis that the daughter is receiving Social Security benefits. That section states in pertinent part:

> No agreement which is less than the presumed child support amount shall be approved if means tested sources of income such as aid under the personal opportunities with employment responsibilities (POWER) program, health care benefits under Title XIX of the Social Security Act, supplemental nutrition assistance program, supplemental security income (SSI) or other similar benefits are being paid on behalf of any of the children.

Section 20-2-307(d). Wife argues "[i]t stands to reason that if the court is prohibited from approving a downward deviation from the presumed child support amounts by agreement, then surely the court is statutorily prohibited from making a downward deviation from the presumed child support amount in its own decree resulting from a contested case."

[¶12] Wife did not, however, develop this argument before the district court. There was no evidence as to whether the benefits she received on behalf of the daughter were means tested or not. At oral argument, Wife's counsel agreed that he did not know the nature of the benefits. As such, we cannot evaluate whether the statutory provision is applicable.

[¶13] Wife provides no relevant authority that the actual benefits she receives on behalf of the daughter may not be taken into account in the child support calculation. In fact, Wyo. Stat. Ann. § 14-2-201 (LexisNexis 2013) provides:

> Any minor having a living parent and owning property with income sufficient for his maintenance and education in a manner more expensive than his parent can reasonably afford,

4

regard given to the situation of the parent's family and to all circumstances of the case, the expenses of the minor's education and maintenance may be defrayed out of the income of the minor's own property in whole or in part, as judged reasonable and as directed by the court. The charges for maintenance and education may be allowed accordingly in the settlements of the accounts of the minor's guardian.

Although the daughter is not a minor and her income is not from property she owns but rather from benefits she receives, the clear intent of § 14-2-201 is to allow other sources of income available to a child to be used for her care. In addition, § 20-2-304(e)[1] addresses Social Security benefits to some extent. Although that provision specifically pertains to the "support obligor's" benefits, the provision may have some relevance and the district court may consider it on remand.

[¶14] We, therefore, reverse and remand for the district court to determine the amount of support under the presumptive child support guidelines and consider whether or not a downward deviation under § 20-2-307 or a set off under another provision is appropriate under the circumstances of this case.

### *B. Calculation of Husband's Net Income for Determination of Child Support*

[¶15] Under our guidelines, the presumptive child support amount is calculated using the parents' net income. Section 20-2-304.

---

[1] Section 20-2-304(e) states:

(e) If a proportion of a support obligor's social security or veteran's benefit is paid directly to the custodian of the obligor's dependents who are the subject of the child support order, the total amount of the social security or veteran's benefit, including the amounts paid to the obligor and custodian under the child support order, shall be counted as gross income to the obligor. However, in determining the support amount, the amount of the social security or veteran's benefit sent directly to the custodian shall be subtracted from the obligor's share of presumptive support. If the subtraction of the social security or veteran's benefit sent directly to the custodian results in a negative dollar amount, the support amount shall be set at zero. The child support obligation shall be offset by the amount of the social security or veteran's benefit sent directly to the custodian, beginning from the time the custodian began receiving the social security or veteran's benefit. The obligor or the department of family services may apply to the court to receive a credit against arrears for any social security or veteran's benefits that are paid retroactively to the custodian. For purposes of this subsection, "custodian" means the custodian of dependent children under a child support order and the physical custodian of dependent children who are the subject of a child support order.

"Net income" means income as defined in paragraph (ii) of this subsection less personal income taxes, social security deductions, cost of dependent health care coverage for all dependent children, actual payments being made under preexisting support orders for current support of other children, other court-ordered support obligations currently being paid and mandatory pension deductions. Payments towards child support arrearage shall not be deducted to arrive at net income[.]

Wyo. Stat. Ann. § 20-2-303(a)(iii) (LexisNexis 2013). Income means:

[A]ny form of payment or return in money or in kind to an individual, regardless of source. Income includes, but is not limited to wages, earnings, salary, commission, compensation as an independent contractor, temporary total disability, permanent partial disability and permanent total disability worker's compensation payments, unemployment compensation, disability, annuity and retirement benefits, and any other payments made by any payor, but shall not include any earnings derived from overtime work unless the court, after considering all overtime earnings derived in the preceding twenty-four (24) month period, determines the overtime earnings can reasonably be expected to continue on a consistent basis. In determining income, all reasonable unreimbursed legitimate business expenses shall be deducted. Means tested sources of income such as Pell grants, aid under the personal opportunities with employment responsibilities (POWER) program, supplemental nutrition assistance program and supplemental security income (SSI) shall not be considered as income. Gross income also means potential income of parents who are voluntarily unemployed or underemployed[.]

Section 20-2-303(a)(ii). Wyo. Stat. Ann. § 20-2-308(b) (LexisNexis 2013) states that "[s]uitable documentation of current earnings includes but is not limited to pay stubs, employer statements, or **receipts and expenses if self employed."** (Emphasis added.)

[¶16] The evidence presented in this case regarding Husband's income and reasonable unreimbursed legitimate business expenses was very confusing. Possibly because of the perplexing state of the evidence, the district court chose to determine Husband's net income by using the amount he tithed to his church,

6

assuming it was ten percent of his net income. The district court's determination of Husband's net income stated:

> [Husband] has, to put it mildly, been aggressive in the expenses he claims are needed to operate his businesses. He has no W-2 form because he is self-employed. His 2010 gross from income was $103,000. He claims expenses of roughly $70,000. He paid tithing of $6,400, which to members of the L.D.S. faith is 10%. (Some say it should be 10% of gross; others say it is 10% of net). The Court finds $6,400 as $1/10^{th}$ of 64,000 to be the best independent measure of what [Husband's] real net income is. Accordingly, the court finds that [Husband] earns or is able to earn $64,000 per year or $5,333 per month.

[¶17] As the district court recognized, Husband did not provide typical documentation of his income or expenses, in part because he was self-employed. Husband was associated with at least two businesses, Bagley Construction LLC and Bagley Horseshoeing. From the record, it appears that he paid all of his expenses, personal and business, out of the business accounts. His bookkeeping was informal and provided little detail on the actual nature of the expenses. Husband was unable to justify some of his 2011 "business" expenses at trial. For instance, he did not classify any fuel expenses as "personal" until October of 2011. On cross examination, he conceded he had done some personal driving earlier in the year. Husband also classified a pay check to himself as a business expense but apparently did not otherwise declare it as income. In addition, Husband conceded other items which were classified as business were actually "part" personal.

[¶18] While we understand the district court's frustration with the state of the record, it was, nonetheless, obligated to determine Husband's net income using the statutory definitions of "income" and "net income" in § 20-2-303(a)(ii) and (iii), rather than the arbitrary number associated with the amount he tithed to his church. Because the district court did not follow the statutory requirements, we reverse and remand for a proper determination of Husband's net income. Starting with Father's gross income, which seems to be fairly clear from the record, the court will deduct all "reasonable unreimbursed legitimate business expenses" in accordance with § 20-2-303(a)(ii). In determining which business expenses should be deducted from his gross income, the district court must keep in mind "[t]he burden of proving that an expense was a reasonable unreimbursed legitimate business expense lies with the party seeking the deduction." *Watson v. Watson,* 2002 WY 180, ¶ 16, 60 P.3d 124, 128 (Wyo. 2002). After calculating his income by subtracting the legitimate business expenses, other expenses identified in the definition of "net income" in § 20-2-303(a)(iii), such as personal income taxes, social security taxes, etc., may be deducted. If Husband did not do an adequate job of explaining and documenting each allowable expense, he will not be

entitled to a deduction for the purposes of determining his net income. Once the amount of his net income is determined, the district court should apply the child support guidelines to determine the presumptive amount of child support. Section 20-2-304.

### C. Disposition of Marital Property

[¶19]  The district court ordered Husband to pay Wife $149,500 for her share in their property, including $89,000 for her contribution to the family home, $5,000 for Bagley Construction, $20,000 for Bagley Horseshoeing and $25,500 for her share of their personal property. These amounts add up to $139,500 rather than the $149,500 awarded. We assume this is a simple mathematical error, and order that it be corrected. Wyo. Stat. Ann. § 20-2-114(a) (LexisNexis 2013) states the rule for disposing of a couple's marital property in a divorce:

> [I]n granting a divorce, the court shall make such disposition of the property of the parties as appears just and equitable, having regard for the respective merits of the parties and the condition in which they will be left by the divorce, the party through whom the property was acquired and the burdens imposed upon the property for the benefit of either party and children. The court may decree to either party reasonable alimony out of the estate of the other having regard for the other's ability to pay and may order so much of the other's real estate or the rents and profits thereof as is necessary be assigned and set out to either party for life, or may decree a specific sum be paid by either party.

### 1. Marital Residence

[¶20]  Husband claims the district court erred by ordering him to pay Wife $89,000 for her share of the family home, valued at $250,000, because they did not own the land on which the home was constructed. Husband, Wife, their children, and members of Husband's family built a log home on land held in Husband's grandmother's trust, which was administered by his father, Kdell Bagley (Kdell). Prior to moving into the home, Husband, Wife and the children had lived in a small trailer home and in Husband's parents' home while they were gone to China. Kdell borrowed $53,000 secured by the equity in his own home and used those funds to partially construct the parties' new home.

[¶21]  In addition, Wife's parents sold Husband and his business associates some property at a discounted price which was resold at a profit and Husband's share of the proceeds was $89,000. Wife and her mother both testified that the purpose of the sale at the discounted price was to allow the parties to resell the property and use the proceeds to

construct their new home. Husband, however, testified that the proceeds went to pay other bills, rather than to construct the home.

[¶22] At the time of trial, the parties had constructed a $250,000 home on someone else's land, which was possibly subject to a $53,000 debt. Husband lived in the home and paid Kdell $500 per month toward the loan, although there was no evidence as to the current principal balance of the debt. Husband's position was that he owned no interest in the house because there was no guarantee that the land would ever be transferred to him. Kdell agreed with that assessment. He responded to the district judge's questions as follows:

> THE COURT: What are the odds that [Husband] will get that ground that the house is built on?
> [KDELL]: The odds?
> THE COURT: Well, the chances.
> (Pause.)
> [KDELL]: Well, I don't know how to answer that honestly. Things change. And I would say this. He might receive it. To give you an odd of one to ten, I cannot do so, but he might and he might not.

Kdell testified, however, that two of his children (Husband's siblings) had already received gifts of land from the trust on which they had built houses. He explained:

> Q. Is there any other understanding that each of the kids would get a chunk of ground to build a house on at some point in time?
> A. If the circumstances are right – we have never written anything or made any verbal promises, but I – I have given to two of them. The others could imagine that.

Considering the testimony, the district court ruled:

> 11. [Wife's] parents . . . sold 80 acres of land at a reduced price to [Husband] and his business partners in Bagley Construction, LLC and Turnerville Twin Peaks. This, in turn, would be sold for a residential development and the profit made would provide the funds needed to build the [parties'] house. To date, [Husband] has received $8[9],000 from this venture. [Husband] claims this is all he will receive.

12.   Until [Husband's] father, Kdell, went to China to teach in 2007, [Wife], [Husband], and their children lived in a small trailer on Kdell's property. . . .  When Kdell went to China, [Husband] and [Wife] moved into Kdell's home in Fairview.  During this time, [Husband] chose a location for their new home on his grandmother's property (or property owned by Kdell as trustee for his mother).  The house was constructed primarily through family labor.  It is not subject to any mortgage.  All of the family, [Husband], [Wife], the children, Kdell, and [Husband's] brother . . . worked on it.  The Court can reasonably conclude that a large part of the capital to purchase the building materials came from the funds obtained from the sale of the Turnerville property.  The home, now complete, is a large log home with an insured value of $250,000.

[Husband] now lives in the home and pays his father $500 per month to pay off the $53,000 loan Kdell obtained.

13.   Thus, [Husband] and [Wife] have worked on a $250,000 home that is located on land they do not own.  According to Kdell, the home was built so [Husband] and his family would have a place to live, but "no promises" that [Husband] would own the land [were] ever made.  However, Kdell's other children have received or will receive ownership of land now owned by his grandmother or her trust.  As to [Husband], Kdell testified that [Husband] "might receive it, he might not.  Things change."

14.   The circumstances shown in Kdell's testimony, [Wife's] testimony, and [Husband's] testimony establish the following circumstances upon which the Court can reasonably infer that [Husband] will eventually get the home after [Wife] is out of the picture.  In 2007 when Kdell went to China, it was clear that [Husband] and [Wife] needed a home larger than a trailer.  With Kdell's help in getting a loan of $53,000 and with his labor, they began construction on a home for [Husband] and [Wife].  There is a history of Kdell, acting as trustee for his mother, . . . giving a parcel of property to Kdell's children so they could build their home on it.

Around 2009, before the home was completed, [Husband] and [Wife] were again in marital strife. They had divorced once and it looked like it could happen again. One can reasonably infer that Kdell and [Husband] decided to wait until things settled down before any property was conveyed to [Husband]. If [Husband] got the home too soon, it could be sold as a result of a divorce decree resulting in it being sold and a stranger living among the family, or in the alternative, [Wife] could receive it.

Because Kdell and [his mother] are not parties to this case the Court cannot enforce against them whatever rights [Husband] or [Wife] may have to the value they have added to the land by building a house, but the Court can recognize and enforce equitable remedies between [Husband] and [Wife] and order [Husband] to compensate [Wife] for her contribution to [Husband's] present economic benefit.

15. It appears that there is a net equity in the home of approximately $200,000 ($250,000 - $50,000 debt to Kdell). The Court finds that [Husband] and his family members did most of the work in building the home. [Wife] did work on the home and contribute[d] through her family; $89,000 was made available to help them. Whether this was used to support the family while [Husband] worked on the home or to provide funds for building materials doesn't really matter. The Court finds that [Husband] should pay [Wife] $90,000 for her contribution in building the home, caring for the family, and for future support given her financial condition she will be left in following the divorce.[2]

[¶23] Husband claims the parties had no ownership in the land and, consequently, no ownership interest in the home. He argues, therefore, that the possibility that he would receive the land as a gift in the future was a "mere expectancy" that cannot be distributed in a divorce action. As we stated earlier, the court is statutorily obligated to dispose of the marital property "as appears just and equitable." "[W]hen a court divides property incidental to the granting of a divorce, [it] is limited by the amount of property in its hands for division and a mere expectancy is not subject to division." *Storm v. Storm,* 470 P.2d 367, 370 (Wyo. 1970). The *Storm* ruling was made in the context of an inheritance

---

[2] We are not sure why the district court rounded some of the values in its decision letter, i.e., the $53,000 loan to $50,000 and the $89,000 contribution from Wife's family to $90,000. However, neither party takes issue with the rounded numbers, so we will not further consider the matter.

which the husband received after the divorce trial but before the final decree was entered. In that case, the inherited property was not part of the marital estate and the wife was not entitled to any part of it. *Id.*

[¶24] The case at bar is different from *Storm.* While Husband and Wife may have a "mere expectancy" of receiving title to the land upon which the house is built sometime in the future, they already invested other marital property in the house. The district court seemed to believe they might have some claim against the trust for the value of the improvement if the property is not deeded. We need not delve into any potential claims, however, as the district court's decision focused on the contribution to the marital residence which came through Wife's family.

[¶25] Section 20-2-114(a) allows the district court to take into consideration "the party through whom the property was acquired" and the condition each party will be left in after the divorce when making a just and equitable property distribution. Wife and her mother both testified that the purpose of the discounted sale of the property to Husband and his associates was to provide Husband and Wife with a means of earning money to finance their own home. In *Walters v. Walters,* 2011 WY 41, ¶ 10, 249 P.3d 214, 222 (Wyo. 2011), we approved a property distribution which included an order that the wife was required to repay the husband for funds he expended from his own assets on marital property. Similarly, in this case, Wife is the party through whom the $89,000 was acquired, and the district court was justified in considering Wife's contribution in its property division.

[¶26] We agree with the district court's finding that it really makes no difference whether the $89,000 contribution from Wife's family was used directly to pay for the house construction or, as Husband testified, it was used for other needs, because that effectively freed other family income to be used on the house. The district court found that Wife cared for the children and home and "did not participate in the family business, so she knows little of the financial aspects of the family." This finding is amply supported by the record. Wife testified that Husband provided her with money from either the Bagley Construction or Bagley Horseshoeing account each month to pay their bills, but she had no actual control over any other aspect of the family's finances. With regard to the money from the sale of her parents' land, Wife believed the money would be deposited in an account belonging to her and Husband to be used to finish the house, but it was, instead, deposited in the Bagley Construction account, over which she had no control. Wife testified she believed the parties owned the house and the evidence demonstrated that it was insured in their names. She understood that the land would eventually be deeded to Husband as part of his inheritance. However, when she asked Husband about the details of the transaction she was told to mind her own business.

[¶27] In the end, Husband used the money from Wife's family to invest in the house without taking any action to ensure their investment would be protected. Consequently,

12

it could be said he dissipated or wasted a marital asset. In *Underkofler v. Underkofler,* 834 P.2d 1140, 1141-42 (Wyo. 1992), we affirmed a property disposition which awarded most of the marital property to the wife because the husband had transferred marital property to others and spent the proceeds of a certificate of deposit. In making that ruling, this Court recognized that dissipation of marital assets may be accounted for by the court in a subsequent property division. *Compare Dunham v. Dunham,* 2006 WY 1, 125 P.3d 1015 (Wyo. 2006) (affirming the district court's ruling that funds spent by husband prior to divorce did not have to be taken into account in property distribution because expenditures were not improper). The practical effect of the district court's decision in this case was to do what the *Underkofler* court did—account for Husband's investment of funds acquired through Wife in the house without protecting that asset. It did not equally split the "equity" in the house (which it determined was approximately $200,000), but instead, ordered a refund to Wife of the $89,000 acquired from her family, giving Husband the larger share of the equity. The district court's decision properly accounted for the relative positions the parties would be left in after the divorce. Wife's contribution will be refunded to her; Husband occupies a new log home and, if the property is deeded to him, he will receive that interest free of any claim by Wife.

[¶28] Husband argues, nonetheless, that the district court abused its discretion by ordering him to pay Wife for the contribution because there are no marital assets to use to make the payment. In other words, he claims the court "divided" property which did not exist. We have, in other cases, approved cash awards to spouses despite the fact that there was insufficient cash in the marital estate to cover the judgment.[3] *See, e.g., Boyle v. Boyle,* 2006 WY 124, ¶¶ 21-23, 143 P.3d 368, 374 (Wyo. 2006); *Humphrey v. Humphrey,* 2007 WY 72, 157 P.3d 451 (Wyo. 2007). In such cases, the debtor spouse is often given a certain amount of time to satisfy the judgment. Here, the district court recognized that sufficient cash was not available but gave Wife a judgment against Husband and ordered that the judgment bear interest until paid in full. Husband does not have to immediately satisfy the judgment, but has an incentive to do so as soon as possible since interest is accruing on it. Like in *Boyle, supra,* Husband may have to explore options for satisfying the judgment such as securing a loan, etc.

[¶29] Finally, Husband argues the district court effectively granted Wife an improper award of alimony. In *Muller v. Muller,* 838 P.2d 198, 199 (Wyo. 1992), we recognized that although alimony or spousal support is statutorily authorized, it generally is not favored. Section 20-2-114. It is preferable to account for the relative equities of the parties in the property distribution. *See, e.g., Raymond v. Raymond,* 956 P.2d 329, 334 (Wyo. 1998); *Grosskopf v. Grosskopf,* 677 P.2d 814, 821 (Wyo. 1984). The district court in this case specifically stated it was not awarding alimony but adjusting the equities

---

[3] This is similar to § 20-2-307 which allows the court to impute income to an unemployed or underemployed parent in calculating child support, even though no such income exists.

13

between the parties with a property settlement. There was nothing improper about its decision.

## 2. *Horseshoeing Business*

[¶30] Husband asserts the district court erred by valuing his horseshoeing business, Bagley Horseshoeing, at $40,000. The district court ruled:

> 18. [Husband] owns Bagley Horseshoeing. This business was built during the parties' second marriage. The previous horseshoeing business was sold. Based on the assets in the business, the income earned, and the price of the previous sale of this type of business, the Court finds the value of this business to be $40,000. [Wife's] equitable share is $20,000.

[¶31] In accordance with our standard of review, Wife, as the prevailing party, is entitled to every favorable inference from the evidence and we do not give any consideration to inconsistent evidence presented by Husband, the unsuccessful party. *Reavis,* 955 P.2d at 431. Wife testified the assets of Husband's horseshoeing business included a rather unique shoeing table which allowed horses to be laid down for shoeing. Husband stated that the business included other shoeing equipment, as well. Wife testified that Husband had sold a former shoeing business for approximately $20,000, and had negotiated to sell the current business several years before for an amount she "guessed" to be $40,000, although that sale apparently was not closed.

[¶32] Husband claims the district court could not rely on Wife's speculation to value the business. In *Walters,* ¶ 25, 249 P.3d at 229-30, we reversed a district court's contempt award because the amount was not based on any evidence or measurable formula. This case is different. While Wife's "guess" is not overwhelming evidence, it was based upon some history and, more importantly, was not contradicted in any way at trial by Husband. In fact, he does not direct us to any evidence he offered as to the value of the horseshoeing business. On this dismal record, we must defer to the district court's findings.[4]

---

[4] Husband also complains about the district court's valuation of some of the parties' other personal property, stating: Husband "did not insist on having this property and should not be compelled to purchase it, particularly at prices he deems excessive." The fact that he deems the prices excessive is irrelevant. He did not present evidence to counter Wife's evidence on the values of much of the property. In fact, he states in his brief that he "did not offer many opinions about the value of the assets." It is hard to understand how he could claim, on this record, that the district court erred by using Wife's values, even if they were arguably subject to criticism. The district court had to somehow account for the values of the marital property in its decision. Furthermore, he does not offer cogent argument or pertinent authority to

14

### 3. *Payment Schedule*

[¶33]  Husband claims the district court erred by failing to provide an appropriate schedule of payments for the money judgment awarded to Wife.  He cites *Bailey v. Bailey,* 954 P.2d 962 (Wyo. 1998), in support of his assertion.  In *Bailey,* 954 P.2d at 966, this Court ruled the district court's order that a large cash award to wife had to be paid within 180 days from the date of the judgment was unfair and an abuse of discretion. The *Bailey* decision is inapposite.  In that case, we were concerned about the short time period the husband had to pay the wife in full.  Here, there is no time period imposed—only the provision that the judgment will bear interest at 10% per annum until satisfied.  The district court did not abuse its discretion.

[¶34]  Affirmed, as corrected, in part and reversed and remanded in part.

---

support his bare assertions on appeal; consequently, we decline to further address the issue.  *See Sands v. Sands,* 2013 WY 60, ¶ 2 n.1, 301 P.3d 128, 129 n.1 (Wyo. 2013).