**Walter E. KLATT, Appellant (Defendant),**

v.

**Dorthy KLATT, Appellee (Plaintiff).**

**No. 5722.**

Supreme Court of Wyoming.

Dec. 6, 1982.

Harry E. Leimback, Casper, for appellant.

Ralph W. Boynton, Casper, for appellee.

Before ROSE, C.J., and RAPER, THOMAS, ROONEY and BROWN, JJ.

BROWN, Justice.

This is an appeal by the husband from a decree of divorce. Appellant's four issues are:

"1. Did the Court error [sic] in ordering the sale of all property, including the defendant's business * * *.

"2. Whether the evidence was sufficient to permit the Court a considered decision as to a proper property division.

"3. Whether the Court abused its discretion when it provided that the parties agree within thirty days to a division of all of the property including the business, and if they could not agree, then the property and the business was to be sold and divided.

"4. Whether the evidence was sufficient to justify the awarding of attorney's fees."

We will affirm.

At the time of the divorce the parties had been married 24 years and had two minor children, ages 16 and 17. Fifty-five year old appellee had some physical disability, a minimum education and employment as a janitor. Appellant, self-employed most of his life, operated Walt's Hide and Metal Salvage, Inc.

The parties owned a home, business property and unimproved land. The business was a family corporation and both parties were officers. The corporation owned tools worth about $500 and certain vehicles. The business had deteriorated since 1979, and the real property is subject to indebtedness. The only liquid assets were less than $400 in business and personal accounts. Appellant had an IRA account, but did not have any idea how much was in it.

There was little credible evidence at the trial to show the value of the real property, personal property, or value of the family business. Before trial appellant promised to furnish appellee a financial statement, but this information never surfaced. Appellee tried to subpoena appellant's financial records, but was unsuccessful.

The trial court granted appellee a divorce and denied appellant's counterclaim for divorce. Appellee was awarded custody of the two minor children and appellant was ordered to pay $150 per month for the support of each child. The divorce decree awarded each party personal effects and other items of personal property. The court ordered appellant to pay appellee's attorney fees in the sum of $540; and finally, the court ordered that all real property and the personal property used in the business be sold and the net equity be divided equally between the parties.

In *Paul v. Paul,* Wyo., 616 P.2d 707, 712 (1980), this Court summarized principles that govern divorce actions in Wyoming. (internal citations omitted):

"1. The trial court has great discretion in dividing the property. '[A] just and equitable division is as likely as not to be unequal.' There are 'no hard and fast rules' governing property divisions.

"2. The trial court's discretion won't be disturbed except on clear grounds.

"3. The Wyoming Supreme Court cannot constitute itself as a court of the first instance to divide property in divorce cases.

"4. 'Generally speaking, a settlement [property settlement] needs to be judged on an overall basis and not necessarily on the basis of separate parts.'

"5. The length of marriage is a consideration.

"6. Judicial discretion should not be exercised so as to reward one party and punish the other. But the court should consider the parties' merits.

"7. Joint ownership of property resulting from a demonstrated intent to share is a 'burden imposed upon the property for the benefit' of both owners; the statute directs consideration of this burden as one factor.

"8. The court should consider through which party the property was acquired.

"9. The court should consider the condition in which the parties will be left after the division.

"10. An award of property is a preferable, modern substitute for alimony.

"11. A property division may reach the separate property of either spouse.

"12. The question of who pays the attorney fees is a part of the property division."

Although the principles listed in *Paul v. Paul,* supra, do not purport to be exhaustive, we believe that most of the principles apply here.

"* * * As an appellate court, we consider that our power to disturb a property settlement fixed by a trial judge is limited indeed. There must be a clear abuse of discretion before we will upset or adjust such a settlement. We consider 'abuse of discretion,' to be such abuse as shocks the conscience of the court. It

must appear so unfair and inequitable that reasonable persons could not abide it.

"We will not—except in extreme circumstances—reach in and readjust property distributions which our able trial judges have described after presiding over the trial which furnishes them with great advantage for decision-making in such matters.

"The question cannot be, What would we have done as trial judges? but must be and is, Did the trial judge act so outrageously in his property settlement decision as to constitute an abuse of discretion?" *Paul v. Paul,* supra, at 714.

I

Section 20–2–114, W.S.1977, provides in part:

"In granting a divorce, the court shall make such disposition of the property of the parties as appears just and equitable, having regard for the respective merits of the parties and the condition in which they will be left by the divorce, the party through whom the property was acquired, and the burdens imposed upon the property for the benefit of either party and children. * * * "

■ Appellant claims that by selling the real and personal property used in the family business he will be put out of business, and will be required to find employment and income opportunities elsewhere. We are not convinced that this is so. He is free to purchase at the sale what tools and business property he needs to operate the business. The purchase price required can easily be obtained from his equity in the real and personal property being sold. He also has equity in the parties' residence and unimproved lots which can be applied to purchase the business property. His liquidity should be improved by disposing of the non-income producing property.

In *Beckle v. Beckle,* Wyo., 452 P.2d 205, 208–209 (1969), the husband made the same argument appellant makes here, that is, the court's order would put him out of business. We said:

"Of course, that would be true no matter what kind of business the parties owned. When a marriage ends in divorce and the business property has to be divided, the business will not thereafter be the same.

"Unfortunately, appellant has been silent as far as suggesting a more workable plan which would still assure the wife a just and equitable share of the property being distributed. Even if such a plan could now be conceived, it would be difficult for us to put it into effect without constituting our court a court of the first instance to divide the property. We have already indicated such is not the function of an appellate court.

"If appellant has something better to suggest, aside from a material change in the shares of the respective parties, it should have been presented to the district court, since generally matters not presented first to to the court below cannot be raised on appeal. [Citation.]"

If appellant here had a more workable plan to distribute the property of the marriage, he should have presented it at the trial; instead, he remained silent.

In *Barbour v. Barbour,* Wyo., 518 P.2d 12, 16 (1974), the court ordered a ranch sold and the proceeds divided. Here again the husband claimed that he would be put out of business. We said:

" * * * He offered no alternative to the method of division as adopted by the trial court, and if he had such a plan he had an obligation to present it to the trial court. *Beckle v. Beckle,* Wyo., 452 P.2d 205 at 209. When business property has to be divided neither the business nor the role of the parties will be the same. *Young v. Young,* Wyo., 472 P.2d 784. Even though the ranch property was ordered sold there was nothing to preclude the husband from purchasing the ranch. He had a one-half interest in the property and all he would need do, in effect, is buy the wife's one-half interest. He made no argument that this could not be done, and the record indicated this was a reasonable possibility."

In *Young v. Young,* Wyo., 472 P.2d 784, 785 (1970) appellant claimed former decisions by this Court show a historical policy to allow the husband to retain all of the assets which the husband uses in making a living. We said:

"We fail to find in any of the cases cited by appellant any support for his claim that there has been a policy to allow all assets which the husband uses in making a living to be retained by him. A trial court might very well consider it equitable and proper to award to a husband assets used by him in making a living, if the wife was otherwise properly provided for either in property or alimony."

Appellant cites *Piper v. Piper,* Wyo., 487 P.2d 1062 (1971), in support of his claim that the trial court did not consider the condition in which the parties will be left after distribution of the property. There is no comfort in *Piper* for appellant. The trial court in *Piper* applied the principles previously announced by this Court and considered the source of the property in its order. We do not see the application of *Piper;* but in any event, nothing was said there that is contrary to the disposition of the property made here by the trial court.

█ As far as the record reveals, all property was accumulated during 24 years of marriage. This being so, it certainly was not unreasonable to award each party half of the property. The trial court did not abuse its discretion in ordering all the property sold and an equal division of the parties' equity.

## II

Appellant contends that there was not sufficient evidence to permit the court to properly dispose of the property and that appellee had the burden to produce evidence. There was evidence of the cost of the parties' property and indebtedness. Income tax returns showed a value on the business property. Appellee presented some hearsay evidence, to which appellant did not object, on the value of one piece of property. There were, however, no appraisals in evidence showing the value of the other property. Appellant failed to furnish a financial statement after he had promised to do so.

Appellant cites *Hendrickson v. Hendrickson,* Wyo., 583 P.2d 1265 (1978), for the principle, "a failure of proof by a party must accrue to the benefit of the party who negatives the issue." We have not changed our mind about that principle, but it has no application here. Appellant filed a counterclaim for divorce, and therefore had some obligation to show property values. He was also in a better position to know the values and to produce evidence, although he did not appear to be knowledgeable. He did make a reckless statement that all the property was worth "maybe" a half million, but when asked about certain values, appellant said he did not know them. Whether this failure to provide information was purposeful or neglectful, appellant cannot complain of a deficiency in proof for which he was partially responsible. Appellee did what was reasonably within her power to prove property values by her attempted subpoena of appellant's financial records.

This court has already addressed a failure to fully inform the trial court regarding financial matters in *Barbour v. Barbour,* supra. While the parties' position there was different, what we said in that case applies to appellant here:

" * * * He alone had knowledge of the items of receipts and disbursements and had an obligation to properly advise the court. The record is clear that he had such knowledge at the time of trial. He cannot be heard to complain at this late date that the outcome might have been different had he made full disclosure to the trial court. * * * " *Barbour v. Barbour,* supra, at 15.

█ We do not believe that appraisals were absolutely necessary in this case, although they may have been helpful. If the court had awarded specific property to the respective parties, values might have been important to insure that there was a just and equitable distribution. Perhaps because the evidence on property values was

thin, the trial judge felt equity could best be accomplished if the property was sold and the proceeds divided.

Appellant quotes at length from *Bell v. Bell,* 150 Colo. 174, 371 P.2d 773 (1962), in support of his position. In that case the trial court awarded specific property to the parties. The court did not make findings regarding value of property awarded to the husband, which property was heavily encumbered. The court order required the husband to pay $50,100 within six months to discharge the indebtedness against the property awarded to the wife. The Colorado Supreme Court was troubled how the husband could in some "mysterious way" pay off within six months the $50,100 indebtedness. It reversed the district court, holding that the decree in the lower court was oppressive, an abuse of discretion and that there was nothing "in the record which could possibly justify an order so burdensome." Here, specific property was not awarded, and appellant was not required to pay off a large indebtedness on appellee's property within a short period of time. We do not disagree with the holding in *Bell v. Bell,* supra, but the facts and issues here are entirely different, and afford no support for appellant's position.

In view of the disposition that the court made of the parties' property, we hold that there was sufficient evidence to justify the order. We further hold that the order disposing of the property was not burdensome or oppressive, nor did it amount to an abuse of the court's discretion.

### III

■ Paragraph 7 of the Judgment and Decree provided in part:

"PROVIDED, HOWEVER, that within thirty (30) days from the date of the entry of this Judgment and Decree of Divorce, the Plaintiff and the Defendant may alter the terms and provisions of this paragraph by executing a written agree-

ment, specifically setting forth any modification of this paragraph * * *."

Appellant contends that this provision was an attempt by the court to force the parties to settle their property dispute, and that he was in an inferior bargaining position. In reality the court merely stated a right that the parties had to agree on a property settlement. They have that right even now. What the court said did not enlarge or diminish any right; it merely gave them some time to reconsider their position.

Instead of addressing the issue raised in his third assignment of error, appellant reargues the issue raised in his first assignment of error and refers to *Biggerstaff v. Biggerstaff,* Wyo., 443 P.2d 524 (1968), as additional authority. Appellant does not cite any cases nor make any cogent argument in support of this assignment of error. We need not notice a claimed error unsupported by authority or cogent argument. *Town of Pine Bluffs v. State Board of Control of the State of Wyoming,* Wyo., 647 P.2d 1365 (1982); and *Britton v. State,* Wyo., 643 P.2d 935 (1982). Appellant's argument in this assignment of error is not unlike a fallacy known as "ignoratio elenchi," which in substance consists of supposing that an argument is proved by proving an utterly unrelated argument.[1]

This assignment of error has no merit.

### IV

In this last assignment of error, appellant contends that he should not have been ordered to pay any of appellee's attorney fees. No contention is made that the fees were unreasonable. Cases cited by appellant might have some relevance if reasonableness of fees were an issue, which it is not.

■ We said in *Paul v. Paul,* supra, at 713, "The question of who pays the attorney fees is a part of the property division." We go further here and hold that attorney fees,

1. "A term of logic, sometimes applied to pleadings and to arguments on appeal, which signifies a mistake of the question, that is, the mistake of one who, failing to discern the real question which he is to meet and answer, addresses his allegations or arguments to a collateral matter or something beside the point." Black's Law Dictionary 673 (5th ed. 1979).

child support, property division and any other financial matters must all be considered together in making a just and equitable disposition of the family assets. A trial court cannot properly consider and determine separate financial matters in isolation. The entire financial impact on the parties must be considered together.

■ Although the reasonableness of attorney fees is not an issue here, we note that they are very reasonable. Appellee's attorney prepared necessary pleadings, conducted discovery and tried the case in the district court. The fee for these services was $540. Through testimony, the hours of professional services were made known to the court. We take judicial notice, as apparently the trial court did, that the attorney fees are reasonable.

The trial court did not abuse its discretion in ordering the property sold, providing for child support payments and ordering appellant to pay appellee's attorney fees. There was sufficient evidence before the court to support its judgment and decree.

Affirmed.