**Maurice Tom McLOUGHLIN,**
**Appellant (Plaintiff),**

v.

**Loula McLOUGHLIN, Appellee**
**(Defendant).**

No. 99–157.

Supreme Court of Wyoming.

Jan. 28, 2000.

Representing Appellant: Philip P. Whynott, Cheyenne, WY. Argument presented by Mr. Whynott.

Representing Appellee: Daniel G. Blythe of Blythe & Steiner, P.C., Cheyenne, WY. Argument presented by Mr. Blythe.

Before LEHMAN, C.J., and THOMAS, MACY, GOLDEN, and HILL, JJ.

HILL, Justice.

This appeal challenges the district court's division of marital property between Maurice McLoughlin (Husband) and Loula McLoughlin (Wife). Husband contends that the division of the real property owned by the parties was based on an excessive appraisal of that property, as well as an improper consideration of its future value. In addition, Husband asserts that, assuming for purposes of argument that the appraisal was accurate, the trial court did not allow Husband ade-

quate time to pay Wife for her share of the property.

We affirm.

## ISSUES

Husband provides this statement of the issues:

1. The trial court abused its sound discretion in its disposition of marital property.

2. The trial court abused its discretion when it held that payment to [Wife] had to be made by January 1, 1999.

3. It was reversible error to make a property division based on expected future values and not on current value.

Wife opted not to provide a statement of the issues in her brief. W.R.A.P. 7.02.

## FACTS

By complaint filed on May 6, 1997, Husband sought to dissolve his marriage. This appeal focuses on that portion of the proceedings wherein the trial court divided the real property of the parties. The facts of this dispute are difficult to sort out because the acquisition and development of the real property at issue was haphazard, was commingled with real and personal property owned by Husband's Mother and the parties' son, and, as is so often the case in matters such as this, was not arranged with divorce and the division of marital assets in mind.

The parties married in 1970 and remained so for 28 years. Husband grew up and worked all his life on a ranch west of Cheyenne, which had been in his family for over 100 years. After Husband's father died, the ranch was owned by Husband's Mother (Mother). Husband worked the ranch with-

out pay and assisted his Mother to some small extent in paying taxes and other expenses. Husband and Wife began living at the ranch in November of 1970, not long after they were married. Husband was not concerned about being paid for his work, or his other contributions to the maintenance of the ranch, because he knew that he was to inherit it from his Mother [1]. It is undisputed that in 1974, Mother deeded 920 acres of the ranch to Husband and Wife [2]. Husband's offer, as far as a property division was concerned, was that Wife retain all of her own assets, except her interest in the ranch, and that Husband keep the entire ranch, allowing to Wife something less than one-half of its value. His main goal is to keep the family ranch together in one, family-owned parcel. Wife, on the other hand, asked that the ranch be divided equally between them.

As might be expected, Husband contends that Wife contributed nothing to the value of the ranch during their 28–year marriage, and that he worked a "day job" in order to keep the ranch going, as well as performing most of the ranch work. Wife contends that she did assist significantly with the day-to-day ranch work, that she also had a "day job" as Postmaster of the Granite Canyon Post Office, that her income was expended for groceries, clothes for the children and for various other family bills, that she invested an inheritance from her father into the operation of the ranch, and that she was principally responsible for raising the parties' four children. We will note here, although it has very little to do with the result we reach in this case, that there were numerous financial transactions between Husband and Mother over the years. These transactions included sales of parcels of land, loans, purchase by Mother of promissory notes owed by Hus-

---

1. Mother had two children, and it was planned that Husband would inherit the ranch and a daughter would inherit the Mother's house in town. However, in 1995, the daughter died, leaving Husband as Mother's only child and only apparent heir.

2. Mother continues to own a significant portion of the historic McLoughlin family ranch. The parties' son also owned a small acreage on the ranch and ran some cattle and sheep there. The buildings that constitute the ranch "compound" (house, barn, shed, quanset hut, etc.) straddle the property line between the land owned by the parties in this matter and the land owned by Husband's Mother, thus complicating the settling of the value of the real property. Yet another complicating factor is a suggestion in the record that the 920–acre parcel owned by Husband and Wife has no access except across lands owned by Mother. To the extent the ranch has been used for ranching purposes, the grazing of cattle and sheep has been done on all of the ranch, with there being no distinction between the lands owned by Husband and Wife, Mother, or son.

band, and seemingly "friendly" foreclosures on parcels of land owned by Husband near the time this divorce action was filed[3]. Both parties obtained appraisals of the real property. Again, as might be expected, Husband's was for $250,000 and Wife's was for $315,000.

The trial court determined the value of the ranch to be $300,000 and allocated to Wife a one-third interest, or $100,000. He reduced that sum by one-third of the indebtedness of about $50,000 owed to Mother ($17,000) and ordered husband to pay Wife $83,000 by January 1, 1999. Husband contends that the ranch is heavily mortgaged and, because of that, insists it is not possible for him to make the scheduled payment to Wife of the $83,000 and still keep the ranch together. However, the record discloses that all of the mortgages against the property, as well as those against ranch equipment, are held by Mother. She has been able to "lend" Husband money because she recently received an inheritance from her brother.

## DISCUSSION

Husband asks that we remand this case to the trial court for a reconsideration of the factors the court employed in arriving at a valuation of the ranch. He asserts that the court improperly relied upon an assumption that Husband would inherit his Mother's interest in the ranch. He also asserts that the trial court failed to take into account that the parties' ranch was acquired through Husband's family, as well as several other factors. Relying on the language of Wyo. Stat. Ann. 20–2–114 (LEXIS 1999) and this Court's decision in *Paul v. Paul*, 616 P.2d 707, 712–13 (Wyo.1980), Husband contends that the trial court abused its discretion in awarding Wife a one-third interest in the ranch.

■ With respect to the trial court's consideration of Husband's "expected" inheritance, it is claimed that the trial court erred because the record demonstrates that the portion of the ranch owned by Mother is in a trust. Indeed, the record does reflect that

Mother's part of the ranch is in a trust. However, a complete reading of that portion of the record establishes that the purpose of the trust, as well as one of the purposes of this litigation, was to keep the ranch intact so that it could be passed from generation to generation without being broken up and sold off outside the family. The record also reflects that the Mother's trust contained funds to keep the ranch going and that those funds would be available to Husband during his lifetime. The record directly reflects that Husband knew he was to "inherit" the ranch from his Mother, whether that was in the form of an interest from a trust or some other greater interest. The trial court's findings in this regard are misinterpreted by Husband. The only point made by the trial court in this regard was that Husband's assertion that the Wife's appraisal was too high because it did not take into account that the parties' land had no access except across lands of the Mother, was illusory for purposes of the property division. The valuation of $300,000 set by the trial court was well within the range of both Husband's and Wife's appraisals. *See Bricker v. Bricker*, 877 P.2d 747, 750–51 (Wyo.1994). We find no abuse of discretion in this regard.

■ Husband also contends that the trial court failed to give adequate consideration to the fact that the ranch was acquired through his family. *Paul*, 616 P.2d at 712 (item 8). We are satisfied from a comprehensive review of the record that the trial court heard and considered extensive evidence concerning the source of the ranch property. Wife was awarded only a one-third interest. The record demonstrates that the parties had "lived and saved and worked together" for 28 years. In light of those facts, we hold the division of the ranch to be fair and equitable. *Barney v. Barney*, 705 P.2d 342, 345 (Wyo. 1985). Once again citing to *Paul*, Husband makes perfunctory claims that: The trial court's division was done to punish Husband and to reward Wife; the trial court failed to require Wife to share the burdens of that division; the trial court did not consider how ownership was acquired; and the trial court

---

**3.** We do not intend to suggest any "wrongdoing" or collusion between Husband and Mother, but

those transactions contributed to the "mess" the trial court was called upon to disentangle.

did not consider what the condition of the parties would be following the division. The record simply does not support any of those contentions. Indeed, it belies them.

▮ Husband contends that the trial court abused its discretion because it "... did not take into consideration as to how, and at what expense, the [Husband] is to pay the $83,000 awarded to [Wife]. [Husband] is not flush with money[.]" Husband contends that this Court has established a requirement that the trial court must hold a hearing to determine an appropriate and reasonable payment schedule in cases such as this, citing *Bailey v. Bailey*, 954 P.2d 962, 966 (Wyo.1998). Husband exaggerates our holding in *Bailey*. That case does not mandate a hearing in every case where a property award is made in the form of cash. It does recognize that there may be circumstances that do necessitate such a hearing. In *Bailey*, we remanded for a hearing because the record demonstrated a possibility that a cash payment might be "sufficiently unfair" and work a significant hardship on Mr. Bailey. The purpose of the hearing was to determine if that was the circumstance faced by Mr. Bailey and, if so, for the trial court to fashion an appropriate and reasonable payment schedule that afforded Mrs. Bailey interest on the lump sum award, as well as the lump sum itself in installments. We see few, if any, parallels between the *Bailey* case and this one. Husband's obligations to pay the mortgages on the ranch appear to be optional. He owns personal property that can be sold to raise funds to pay at least a significant portion of the $83,000. The record is clear that he has at least some ability to work and has few, if any, living expenses. It is also evident from the record that he has at least two sources (Mother and girlfriend) from whom he has in the past, and likely could in the future, borrow funds to pay off Wife's interest in the ranch.

The circumstances of this case are more akin to those cases where we have held that lump sum payments do not constitute an abuse of discretion. In *Klatt v. Klatt*, 654 P.2d 733, 736–37 (Wyo.1982), we upheld the sale of the Klatts' marital property, noting that the appellant in that case had resources

and options that belied the claimed hardships that would be created by a sale of the parties' assets. In *Klatt*, we also noted that divorce seldom leaves the parties in the same circumstances as they were in prior to the divorce, and that an appellant's silence as far as suggesting a more workable plan which would still assure the wife a just and equitable share of the property being distributed, leaves both the trial court and the appellate court without options. *Klatt*, 654 P.2d at 736 (*quoting Beckle v. Beckle*, 452 P.2d 205, 208–09 (Wyo.1969); *Barbour v. Barbour*, 518 P.2d 12, 16 (Wyo.1974); and *Young v. Young*, 472 P.2d 784, 785 (Wyo.1970)).

As an aside to the above contention, Husband asserts that the trial court did not consider the tax consequences of the property division. In addition to being idle speculation, that proposition is not supported by cogent argument or pertinent authority, and we will not consider it further. *40 North Corporation v. Morrell*, 964 P.2d 423, 427 (Wyo.1998). We find no abuse of discretion in the trial court's division of the ranch property and decline to remand for additional proceedings because we are unable to ascertain from this record that Husband faces any hardships or detriments, other than those that routinely attend the dissolution of a marriage.

Finally, Husband contends that it was reversible error to make a property division based on expected future values and not on current value. In this argument, Husband revives his contention that the trial court relied on the Husband's expectation of someday inheriting the entire ranch property. As noted above, it is our view that Husband has misconstrued the purport of the court's findings in this regard. Moreover, Husband misconstrues the totality of the record insofar as this issue is concerned. Husband did testify that he expects to inherit the entire ranch property, and it is unmistakable from the record that it is his objective, as well as the objective of his Mother, that the ranch remain an intact family asset. To the extent this argument may have any other vitality, Husband fails to present cogent argument or cite pertinent authority, and we decline to

consider it further. *40 North Corporation,* 964 P.2d at 427.

## CONCLUSION

We hold that there was no abuse of discretion in the trial court's division of the parties' real property, and the divorce decree is affirmed in all respects.