# IN THE SUPREME COURT, STATE OF WYOMING

# 2015 WY 109

APRIL TERM, A.D. 2015

August 18, 2015

JASON WILLIAM STEPHEN,

Appellant
(Defendant),

v.                                                                      S-14-0292

AMY JO STEPHEN,

Appellee
(Plaintiff).

*Appeal from the District Court of Laramie County*
The Honorable Thomas T.C. Campbell, Judge

*Representing Appellant:*
Laura J. Jackson of Jackson & Ojeda, LLC, Cheyenne, Wyoming.

*Representing Appellee:*
Douglas W. Bailey of Bailey, Stock & Harmon, P.C., Cheyenne, Wyoming.

*Before BURKE, C.J., and HILL, KITE\*, DAVIS, and FOX, JJ.*

*\* Justice Kite retired from judicial office effective August 3, 2015, and pursuant to Article 5, § 5 of the Wyoming Constitution and Wyo. Stat. Ann. § 5-1-106(f) (LexisNexis 2015), she was reassigned to act on this matter on August 4, 2015.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of typographical or other formal errors so correction may be made before final publication in the permanent volume.**

**KITE, Justice.**

[¶1]  Jason William Stephen (Husband) appeals from the property division portion of a divorce decree, claiming the district court abused its discretion in valuing his interest in the family business and requiring him to make a lump sum payment to Amy Jo Stephen (Wife).  We affirm.

## ISSUES

[¶2]  Husband contends the district court abused its discretion by:

      1.     Requiring him to make a lump sum payment to Wife rather than devising a plan for payment over time;

      2.     Using a capitalization of earnings method to value the family business without first finding the business is likely to survive the lump sum payment; and

      3.     Failing to apply a minority discount after Wife's expert witness testified the discount was appropriate.

[¶3]  Wife asserts the district court did not abuse its discretion because:

      1.     A lump sum payment was reasonable, given Husband's income and the success of the family business;

      2.     Although a finding of survivability is not required, the district court nevertheless found the family business would continue to be successful when it ordered the lump sum payment; and

      3.     Wife's expert testified a minority discount was not appropriate because the family business was not going to be sold.

## FACTS

[¶4]  Husband and Wife were married in 1997 in Laramie, Wyoming.  They had two children.  During the marriage, Husband went into business with his father to form Gateway Construction, Inc., a residential construction company.  While Husband worked long hours getting the business up and running, Wife was primarily a stay at home mother, but occasionally did some work for the business without pay.  In 2011, Wife filed for divorce in Laramie County, Wyoming where they were living at the time.  The parties reached a settlement agreement as to child custody and visitation but were unable to agree concerning child support and the division of property.  Those matters were tried in the district court.

[¶5] At trial, the primary issues in dispute were Husband's net income for purposes of calculating child support and the value of the family business for purposes of dividing the marital property. Testimony at trial revealed that Husband receives a guaranteed payment of $2,000 per week ($104,000 per year) from the business. The business also provides him with health insurance, a gym membership, a vehicle, gas (at least as necessary for work), and a cell phone. Husband and Wife testified that Husband draws funds to pay his income tax from the business's capital account separate from the guaranteed weekly payments.[1] Husband also has routinely used funds from the capital account to pay for various other expenses, including the $107,000 he incurred in legal fees and costs in this matter prior to the appeal. The district court calculated Husband's net income for child support purposes at $11,186 per month and Husband does not dispute that calculation on appeal. After separating from Husband, Wife went to work as an elementary school teacher at a net salary of $3,231.00 per month. As part of the property distribution in the divorce, Wife sought payment for a portion of the value of the business to compensate her for the contributions she made to its success by staying home, maintaining the household, raising the parties' children and helping out with the business from time to time.

[¶6] Both parties presented expert testimony concerning the value of the business in which, at the time of trial, Husband owned a 60% interest and his father owned a 40% interest. Wife's expert used several methods to value the company, including a capitalization of earnings approach, which resulted in a value of $639,000. Husband's expert also used several methods to value the company, including a capitalization of earnings approach with a marketability discount, which resulted in a value of $61,000.

[¶7] In its decision letter, the district court accepted Wife's expert witness's valuation of the company and calculated Husband's 60% interest of that amount at $383,400. The court ordered Husband to pay one-half that amount, $191,700, to Wife. Combined with amounts the district court ordered him to pay for medical expenses and attorney fees Wife had incurred, which are not disputed on appeal, Husband was to pay Wife a total of $224,822.08.

[¶8] Addressing the method or schedule of payments, the district court said:

> In this case the parties could not agree on [the] value of the principal asset and thus never had an opportunity to negotiate the circumstances of payment to the wife of amounts set over to her. Leaving such a question open at the

---

[1] This testimony was disputed. Husband's father testified that the operating income from the business is distributed to the owners and the owners pay the taxes. The question of how the taxes are paid does not affect our resolution of the issues on appeal.

end of a divorce may be inadvisable but it occurs to this Court that the parties should have an opportunity to discuss this element to best suit their situation. The range, from immediate payment of all debts and amounts owed, to monthly or yearly payments, to the transfer of ownership interests makes it a difficult proposition based on the limited evidence in this regard.

Difficult or not the Court is prepared to rule in this regard, but with the passage of time, and the clearing up of uncertainties, it seems reasonable to give the parties this opportunity. The amounts and divisions are as ordered, but the Court will not set a repayment schedule unless the parties notify the court of their inability to agree. The Court will expect both agreement and presentation of the order or notice of no agreement within twenty (20) days. If notice is given of an inability to agree the Court will enter its own decision on the payment structure immediately, without hearing, and direct preparation of the final orders.

[¶9] Fifty-one days later, Wife notified the district court the parties were unable to agree on a payment schedule. The notice was somehow overlooked and five months later the district court issued a ruling characterizing as "ill-advised" its decision to give the parties an opportunity to negotiate a payment schedule and ordering payment of all amounts due to Wife within ninety days of entry of the decree. Pursuant to the district court's rulings, counsel for Wife prepared a proposed decree and sent it to Husband's counsel for approval as to form. Husband objected to the proposed decree. The district court entered the proposed decree over Husband's objections and Husband appealed.

**STANDARD OF REVIEW**

[¶10] Husband challenges the district court's valuation of the business and its order directing him to make a lump sum payment to wife.

"We will not disturb a property division in a divorce case, except on clear grounds, as the trial court is usually in a better position than the appellate court to judge the parties' needs and the merits of their positions." *Metz v. Metz,* 2003 WY 3, ¶ 6, 61 P.3d 383, 385 (Wyo.2003), citing *Paul v. Paul,* 616 P.2d 707, 712 (Wyo.1980); *Warren v. Warren*, 361 P.2d 525, 526 (Wyo.1961). If our review requires an evaluation of the sufficiency of the evidence to support the district court's decision, "we afford to the prevailing party every favorable inference while omitting any consideration of evidence

3

presented by the unsuccessful party." *Reavis v. Reavis*, 955 P.2d 428, 431 (Wyo.1998) (citations omitted). When interpretation of statutory language is required to resolve an issue, our standard of review is de novo. *Egan v. Egan*, 2010 WY 164, ¶ 7, 244 P.3d 1045, 1048 (Wyo.2010); *Dorr v. Smith, Keller & Assoc.*, 2010 WY 120, ¶ 11, 238 P.3d 549, 552 (Wyo.2010).

*Bagley v. Bagley*, 2013 WY 126, ¶ 7, 311 P.3d 141, 143 (Wyo. 2013).

## DISCUSSION

[¶11]  Husband argues first that the district court abused its discretion when it ordered him to pay the $224,822.08 in a lump sum within ninety days of entry of the divorce decree rather than devising a plan for him to pay the amount over time.  He asserts the district court abused its discretion in not first determining he has the financial ability to make a lump sum payment.  He also contends that rather than making a just and equitable disposition of the property as it was required to do, the district court effectively gave Wife control over the method of payment when it ordered the parties to reach an agreement on a payment schedule and, when they failed to agree, ordered him to pay in a lump sum.  He argues the district court should have set a hearing to determine a just and equitable payment method.  He contends the lump sum payment method is inequitable given Wife's expert, upon whom the district court relied, valued the business on the basis of its anticipated income stream, which necessarily assumes it will continue to operate profitably.  He contends the business cannot continue to operate if he is required to make a lump sum payment.  He asks this Court to adopt a rule requiring district courts to make a finding that a business will survive before ordering a lump sum payment.  Husband also points out that Wife testified at trial she was not asking for a lump sum payment; rather, she proposed yearly payments over a ten year period.

[¶12]  Wife responds that the district court did not abuse its discretion in ordering Husband to make a lump sum payment.  She asserts an evidentiary hearing has never been required before a payment method is established; rather, the only question is whether the method is fair.  She argues the lump sum payment ordered here is fair given Husband's income, the profitability of his business, and his access to business accounts, sources from which to borrow money, and few living expenses.  She also contends Husband had ample opportunity to present a payment plan, failed to do so and should not be heard to complain at this juncture.

[¶13]  In *Bailey v. Bailey*, 954 P.2d 962 (Wyo. 1998), this Court considered the propriety of an order requiring the husband to pay wife a lump sum of $323,081.50 in order to balance the division of property between the parties. There, husband owned controlling interests in two closely held family businesses and was a stock holder in two more

4

closely held family businesses. *Id*. at 964. The district court accepted husband's accountant's valuation of his ownership interests, divided the valuation equally between the parties, and ordered husband to make a lump sum cash payment to wife within 180 days from the date of judgment. *Id*. at 965. Husband challenged the lump sum payment on appeal and this Court concluded it appeared "sufficiently unfair" that it constituted an abuse of discretion. *Id*. at 966. We said:

> The assets available to the husband and his income are directly tied into the family businesses, and they can only be sold under binding restrictive sales agreements. We acknowledge the possibility that he could raise the cash by borrowing money, but there seems to be little point in imposing that demand upon him and creating an interest drain to an outside entity when a fair payment schedule would provide for that interest to be paid to the wife.

*Id*. On that basis, we reversed and remanded the case to the district court for a hearing to determine an appropriate and reasonable payment schedule.

[¶14] Two years later, in *McLoughlin v. McLoughlin*, 996 P.2d 5 (Wyo. 2000), we revisited our holding in *Bailey* when husband challenged a district court order requiring him to make a lump sum payment of $83,000 to wife for her interest in the family ranch. Husband argued it was not possible for him to make the payment and still keep the ranch because it was heavily mortgaged. *Id*. at 7. We said:

> [*Bailey*] does not mandate a hearing in every case where a property award is made in the form of cash. It does recognize that there may be circumstances that do necessitate such a hearing. In *Bailey*, we remanded for a hearing because the record demonstrated a possibility that a cash payment might be "sufficiently unfair" and work a significant hardship on Mr. Bailey. The purpose of the hearing was to determine if that was the circumstance faced by Mr. Bailey and, if so, for the trial court to fashion an appropriate and reasonable payment schedule that afforded Mrs. Bailey interest on the lump sum award, as well as the lump sum itself in installments. We see few, if any, parallels between the Bailey case and this one. Husband's obligations to pay the mortgages on the ranch appear to be optional. He owns personal property that can be sold to raise funds to pay at least a significant portion of the $83,000. The record is clear that he has at least some ability to work and has few, if any, living expenses. It is also evident from the record that he has

5

> at least two sources (Mother and girlfriend) from whom he has in the past, and likely could in the future, borrow funds to pay off Wife's interest in the ranch.

*Id*.

[¶15]   In light of this precedent, the issue for our determination is whether Husband demonstrated that a lump sum payment of $224,822.08 might be sufficiently unfair and work a significant hardship on him such that it is appropriate to remand the issue for a hearing.   We conclude that Husband failed to make the required showing.   From the evidence presented, the district court found that Husband's net income for child support purposes was $11,186.00 per month.   The district court further found that over the years Husband had "regular access" to the business's capital account, had "routinely" and "without limitation" relied on the account to "fund aspects of his life" and over the years had taken as little as $7,000 and as much as $105,000 from the account.   The district court found no evidence to support the assertion by Husband and his father that Husband's draws from the account had ever been treated as loans.

[¶16]   The district court also found the business had been successful even in lean years, had substantial projects underway and had "a future plan to build capital to avoid husband's father from being a regular source of loans or guarantees."   Additionally, the district court found

> The husband's income … will leave him in a strong financial condition, and the ruling of the Court as to the distribution of some of the value of [the business] will not cause his income to decline dramatically or permanently. Both partners, father and son, have a long standing commitment to this business and will have no reason to alter that successful course.   Husband's future holds more of the same success after recovery from divorce based on the growth of a business that occurred during the marriage.

Thus, contrary to Husband's assertion, the district court in fact found he had the financial ability to pay the amount owed to Wife without adversely affecting him or the business in the future.   These findings are fully supported by the evidence presented.

[¶17]   In addition, the evidence showed that Husband has at least two sources from which to borrow money (the business and his father) and as an owner of the business can, with his father's agreement, dispose of non-income producing property, liquidate assets or borrow against equity in the business or business property.   Husband also has the ability to borrow against personal property, including perhaps the $280,000 home that he testified he would be moving into a month after the trial.

6

[¶18] Given all of the evidence presented in this case, we conclude the district court did not abuse its discretion in ordering Husband to pay the amount owed to wife in a lump sum. We note that this proceeding began in September 2011. It is now almost four years later and the parties have incurred the expense of two attorneys, three expert witnesses,[2] a guardian ad litem, two mediations, a two-day trial and an appeal. Sending this case back to the district court for yet another hearing is not in the best interests of the parties, justice or judicial economy. The district court fully and fairly considered the issues Husband presents on appeal. In the exercise of its discretion, it found Husband has the ability to pay; found payment of the amount ordered would not adversely affect him or the business in the future; and, while indicating it was prepared to enter an order, gave the parties the opportunity to work out a payment schedule. When they could not, the district court properly exercised its discretion and, based on the evidence presented and its assessment of the witness's credibility, ordered Husband to pay the amount owed in a lump sum. Under the circumstances presented, we decline to further prolong this divorce action by remanding for another hearing. We also decline to impose our own payment schedule and thereby place Wife in the position of an unsecured creditor of Husband's business.

[¶19] Addressing Husband's second issue, in light of the district court's express finding that neither Husband or the business would be adversely affected by requiring him to pay the $224,822.08, we find no abuse of discretion in the district court's acceptance of the capitalization of earnings method for valuing the business. It was the job of the district court, not this Court, to consider the experts' testimony, weigh their credibility in light of the other evidence presented and determine which approach best fit the circumstances. We also reject Husband's final claim. Contrary to his assertion, Wife's expert testified at trial that he did not apply a minority discount because it had no application in this situation where there was no suggestion the business was going to be sold.

[¶20] Affirmed.

---

[2] In addition to the two expert witnesses who appeared on behalf of the parties at trial, the parties hired another expert witness to value the business for purposes of mediation.