# IN THE SUPREME COURT, STATE OF WYOMING

# 2021 WY 115

### OCTOBER TERM, A.D. 2021

October 20, 2021

BENJAMIN M. SNYDER,

Appellant
(Defendant),

v.

S-21-0067

LAURA E. SNYDER,

Appellee
(Plaintiff).

*Appeal from the District Court of Big Horn County*
The Honorable William L. Simpson, Judge

*Representing Appellant:*
Christopher J. King, APEX Legal, P.C., Worland, Wyoming.

*Representing Appellee:*
Alex H. Sitz, III, Meinecke & Sitz, LLC, Cody, Wyoming.

*Before FOX, C.J., and DAVIS, KAUTZ, BOOMGAARDEN, and GRAY, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of typographical or other formal errors so correction may be made before final publication in the permanent volume.**

**KAUTZ, Justice.**

[¶1]    In this divorce case, the district court awarded Benjamin M. Snyder (Husband) all the interest in his business and ordered him to pay Laura E. Snyder (Wife) $100,000 to equalize the property distribution.  Husband asserts the district court abused its discretion in valuing the business and requiring him to make the equalization payment within 120 days of the divorce and erred by granting Wife a judgment against his business.  He also claims the district court violated his constitutional rights by allowing Wife to take their minor child (Child) to church during his visitation time.  We affirm the district court's property disposition and visitation order but reverse the judgment against the business.

## ISSUES

[¶2]    The issues raised by Husband, which we have reworded, are:

>        1.      Did the district court abuse its discretion by assigning a value to Husband's business using Wife's expert's opinion?

>        2.      Did the district court abuse its discretion by requiring Husband to make the equalization payment to Wife within 120 days of the divorce?

>        3.      Did the district court err by awarding a judgment against Husband's business?

>        4.      Did the district court violate Husband's constitutional rights to parent or to freedom of religion by allowing Wife to take Child to church during his visitation time?

## FACTS

[¶3]    Husband and Wife married in 1998, and Wife filed for divorce in 2019.  The parties and Child lived in Lovell, Wyoming, where Husband owned and operated Home Technology Solutions, LLC (HTS).  HTS installed network, telecom, and audio/video wiring and equipment for residential and commercial customers.  Husband obtained a Wyoming low voltage contractor's license to operate the business.

[¶4]    The parties' primary marital assets were HTS; their home, together with a bank account containing money to repair the roof; and another business owned by Husband, Snyder Enterprises. Snyder Enterprises was purchasing a building from Husband's parents and leasing it to HTS.  After a trial, the district court awarded HTS and Snyder Enterprises to Husband and the house with the roof fund to Wife.  Using Wife's expert's opinion, the district court assigned HTS a value of $300,000.  To equalize the property distribution, the court ordered Husband to pay Wife $100,000 within 120 days of the divorce.

1

[¶5]     The district court granted Wife primary physical custody of Child.  Husband was awarded liberal visitation under the same terms as a stipulated interim order entered while the divorce was pending.  Husband was to have visitation with Child every other weekend, every other Tuesday night, and for five weeks in the summer.  As per the earlier stipulated order, Wife was allowed to take Child for one hour on Sundays when Husband had visitation so she could take Child to church.  Husband appealed.

## DISCUSSION

### A.  *Property Disposition*

[¶6]     Husband contends the district court abused its discretion by adopting Wife's expert's opinion on the value of HTS and ordering him to make the equalization payment within 120 days of the divorce.  Wyo. Stat. Ann. § 20-2-114(a) (LexisNexis 2021) governs the disposition of a couple's marital property in a divorce:

> [I]n granting a divorce, the court shall make such disposition of the property of the parties as appears just and equitable, having regard for the respective merits of the parties and the condition in which they will be left by the divorce, the party through whom the property was acquired and the burdens imposed upon the property for the benefit of either party and children. . . .

[¶7]     "Disposition of marital property is 'committed to the sound discretion of the district court.'"  *Begley v. Begley,* 2020 WY 77, ¶ 20, 466 P.3d 276, 283 (Wyo. 2020) (quoting *Porter v. Porter,* 2017 WY 77, ¶ 12, 397 P.3d 196, 198 (Wyo. 2017)) (other citations omitted).  "We review a division of property for abuse of discretion[.]"  *Conzelman v. Conzelman,* 2019 WY 123, ¶ 15, 453 P.3d 773, 778 (Wyo. 2019).  *See also, Edwards v. Edwards,* 2020 WY 35, ¶¶ 15-18, 459 P.3d 448, 451-52 (Wyo. 2020) (applying the abuse of discretion standard to review the district court's division of marital property).  To determine whether the district court abused its discretion, "we consider the reasonableness of its decision."  *Golden v. Guion,* 2016 WY 54, ¶ 18, 375 P.3d 719, 724 (Wyo. 2016).  *See also, Verheydt v. Verheydt,* 2013 WY 25, ¶ 19, 295 P.3d 1245, 1250 (Wyo. 2013) ("In determining whether an abuse of discretion occurred, our core inquiry is the reasonableness of the district court's decision." (citing *Hanson v. Belveal,* 2012 WY 98, ¶ 14, 280 P.3d 1186, 1192 (Wyo. 2012)).  "We will not disturb a property division in a divorce case, except on clear grounds, as the trial court is usually in a better position than the appellate court to judge the parties' needs and the merits of their positions."  *Metz v. Metz,* 2003 WY 3, ¶ 6, 61 P.3d 383, 385 (Wyo. 2003) (citing *Paul v. Paul,* 616 P.2d 707, 712 (Wyo. 1980), and *Warren v. Warren,* 361 P.2d 525, 526 (Wyo. 1961)).

2

[¶8]   In making its property disposition, the district court has "the duty to weigh the evidence, including any expert testimony[.]" *Bishop v. Bishop,* 2017 WY 130, ¶ 28, 404 P.3d 1170, 1178 (Wyo. 2017) (citing *Semler v. Semler,* 924 P.2d 422, 423-24 (Wyo. 1996)).  To evaluate the sufficiency of the evidence supporting the district court's decision, "'we afford to the prevailing party every favorable inference while omitting any consideration of evidence presented by the unsuccessful party.'" *Bagley v. Bagley,* 2013 WY 126, ¶ 7, 311 P.3d 141, 143 (Wyo. 2013) (quoting *Reavis v. Reavis,* 955 P.2d 428, 431 (Wyo. 1998)).

## 1.  *Business Valuation*

[¶9]   Husband argues the district court abused its discretion by relying on Wife's expert's opinion to assign a $300,000 value to HTS.  He asserts HTS was worth only the appraised value of its assets ($75,000), and the rest of the expert's valuation was based on "blue sky," which depended upon his personal skills.

[¶10]  Mother's expert, Janci Baxter, is a certified public accountant and has a law degree and a master's degree in business administration.  She is also a certified valuation analyst, specializing in business valuations.  Ms. Baxter testified about various means of determining the value of businesses and how to choose the correct method for a particular business.  She indicated the valuation method advocated for by Husband was known as the asset valuation method.  Ms. Baxter testified the asset valuation method is used "in cases where the underlying value of the business is just the assets, and the [owners] are not making any money off of [the assets]."

[¶11]  Another valuation method is called the "income" method.  This is the method Ms. Baxter used to value HTS because the business was "making money off its assets."  She explained there are various techniques to value a business using this method.  She chose the "capitalization of earnings" approach, which uses the business's historical earnings and a capitalization rate to determine its value.  Ms. Baxter used HTS's QuickBooks records and tax returns to determine its earnings from 2014 through 2019.  With that information, she calculated the business's ongoing economic benefit stream (average earnings) as $69,100.  She explained the capitalization rate represents the rate of return expected from the business; generally, small businesses have a higher capitalization rate because the risk is greater.  Ms. Baxter explained in detail how she determined the capitalization rate for HTS.  When she applied the capitalization rate to the economic benefit stream, she determined HTS's value was $308,000.

[¶12]  The district court generally adopted Ms. Baxter's valuation of HTS but reduced it to $300,000 to account for the economic impact of the COVID-19 pandemic.  It specifically rejected Husband's argument that the business was worth only $75,000, the value of its assets.  Husband claims the district court abused its discretion in adopting Ms. Baxter's

3

opinion because "important" evidence was withheld from her and her valuation was based on "blue sky."

[¶13] Husband did not provide expert testimony to support his proposed valuation. However, he cross-examined Ms. Baxter about HTS's 2019 finances using some information she had not considered in preparing her report. He claims this information, which was provided by HTS's accountant, shows Ms. Baxter overvalued the business. Ms. Baxter stated she was not sufficiently familiar with some of the data presented by Husband to know if it would change her opinion of the business's value. She further testified that, prior to preparing her expert report, she had specifically asked Husband's accountant to update HTS's QuickBooks records with accurate information and it was her understanding the accountant had corrected any problems before she did her valuation. The district court acknowledged the cross-examination testimony in its decision but chose to rely on Ms. Baxter's valuation. The court did not act unreasonably when it accepted Ms. Baxter's explanation of her valuation process and reasons for relying on the QuickBooks records. Husband has not established the district court abused its discretion by refusing to reject Ms. Baxter's expert opinion because she did not consider some information in formulating her valuation.

[¶14] Husband also asserts Ms. Baxter improperly included "blue sky," which was "[b]asically [Husband's] good will, contacts and reputation" in her valuation of HTS. Citing *Root v. Root,* 2003 WY 36, 65 P.3d 41 (Wyo. 2003), he claims the district court erred by assigning a value to the business greater than that of its hard assets. The wife in *Root* was a medical doctor who owned a pathology business. *Id.,* ¶ 1, 65 P.3d at 42. Her trial expert stated the business should be valued by adding the "hard assets" to the "accounts receivable, discounted for monthly fluctuations and expenses[.]" *Id.,* ¶ 7, 65 P.3d at 44. The wife's expert also said "blue sky" or "good will" should not be included in the business's value because "the business was wholly dependent on the wife's medical expertise." *Id.* The husband's expert valued the business much higher based on the accounts receivable and the good will. *Id.* The district court accepted wife's expert's opinion, choosing not to include any good will in valuing the business. *Id.,* ¶ 15, 65 P.3d at 46. We ruled the district court did not abuse its discretion in determining the value of the pathology business. *Id.,* ¶ 18, 65 P.3d at 47.

[¶15] On the surface, *Root* seems to support Husband's argument. However, there is more to the story. In *Root,* the husband's expert's opinion, which was disregarded by the district court, had several flaws. The expert "had no knowledge of the business climate" in the area; did not have "the financial information he usually relied on to value" businesses, "such as accurate records of accounts receivable and expenses"; and admitted "his evaluations usually exceeded the actual sales price for the businesses by twenty percent and were usually inflated by twelve percent for a sales commission." *Id.,* ¶ 15, 65 P.3d at 46. Ms. Baxter's opinion did not suffer from the same problems. It was based upon her independent review of HTS's QuickBooks records and tax returns; she specifically

4

considered both the national and local economies; and there was no evidence her evaluations were regularly inflated.

[¶16] Moreover, the income/capitalization of earnings valuation method is a well-recognized means of valuing going concern businesses, and we have approved of its use in other cases. In *Neuman v. Neuman,* 842 P.2d 575, 581 (Wyo. 1992), we ruled the district court did not abuse its discretion by adopting the expert valuation of a closely held trucking business using the capitalization of earnings approach. More recently, we found "no abuse of discretion in the district court's acceptance of the capitalization of earnings method" for valuing the husband's interest in a family construction company. *Stephen v. Stephen,* 2015 WY 109, ¶¶ 4, 19, 355 P.3d 1228, 1230, 1233 (Wyo. 2015). Given Husband offered no expert opinion challenging Ms. Baxter's choice of the capitalization of earnings method for valuing HTS, the district court did not abuse its discretion by adopting Ms. Baxter's opinion and valuing HTS at $300,000.

### 2. Equalization Payment

[¶17] Husband's second challenge to the district court's property distribution is to the requirement that he pay the $100,000 equalization amount within 120 days of the divorce.[1] He claims the evidence shows there are no assets in the marital estate to use to make the payment, and the district court improperly "created wealth where it does not exist." We addressed a similar argument in *Bagley,* ¶ 28, 311 P.3d at 150. There, the husband claimed the district court abused its discretion by ordering him to pay the wife for her share of the marital residence "because there [were] no marital assets to use to make the payment." *Id.* The husband claimed "the court 'divided' property which did not exist." *Id.* We noted it is not unusual for courts to require a cash equity payment from one spouse to the other even though there is insufficient cash in the marital estate to cover it. *Id.* (citing *Boyle v. Boyle,* 2006 WY 124, ¶¶ 21-23, 143 P.3d 368, 374 (Wyo. 2006), and *Humphrey v. Humphrey,* 2007 WY 72, 157 P.3d 451 (Wyo. 2007)). In such cases, the debtor spouse is often given a certain amount of time to satisfy the judgment. *Id.*

[¶18] In *Boyle,* ¶ 22, 143 P.3d at 374, the husband contested the district court's order that he pay the wife an equalization payment by a certain date. He claimed the district court's deadline was unreasonable because it did not give him sufficient time to sell property so he could pay the judgment. *Id.* We concluded the district court did not abuse its discretion by requiring the payment. *Id.,* ¶ 23, 143 P.3d at 374. The husband's claim he could not arrange to pay off the debt was unsubstantiated. *Id.* We specifically noted he might have to pursue other avenues to secure the funding, such as obtaining a loan. *Id. See also, Bagley,* ¶ 28, 311 P.3d at 150 (the district court ordered the judgment in favor of the wife

---

[1] Although the district court also ordered Husband to pay the outstanding balance on a $15,000 automobile loan within 90 days of its order, Husband focuses his appellate argument on the $100,000 equity payment.

to bear interest until paid in full, incentivizing the husband to explore options for satisfying the judgment such as securing a loan).

[¶19] Husband argues his uncontroverted testimony shows he was unable to obtain a loan to make the equity payment. That statement is not borne out by the record. Husband testified he did not know whether he would qualify for a loan because he had not explored that option. Although he stated he did not have collateral or a down payment for a loan, there was no evidence of what loan terms a lender would actually require.

[¶20] While the district court in this case set a deadline for making the equalization payment, it also provided an alternative if Husband could not immediately make the full payment. The court ruled that, until the debt is paid, Husband is required to continue paying Wife the amount of the monthly mortgage payment on the marital home. If Husband fails to make any monthly payment, the remaining balance at the time of nonpayment will be converted into a judgment in favor of Wife, "with accompanying interest at the statutory rate . . . against both [Husband] individually and HTS as a business entity[.]" The payment requirement is similar to that incorporated into the order in *Boyle*. If the husband could not pay by the deadline, he was required "to continue spousal support of $2,500 per month, not to be credited against the judgment, until the debt was paid." *Boyle,* ¶ 23, 143 P.3d at 374-75. The judgment terms in this case are actually more favorable to Husband because he is entitled to a credit against the $100,000 he owes Wife for each payment he makes. *Cf. Bailey v. Bailey,* 954 P.2d 962, 966 (Wyo. 1998) (the district court abused its discretion by requiring the husband to pay the wife a large lump sum payment within 180 days from the date of the judgment without providing any alternative means of payment).

[¶21] Furthermore, although Husband was certainly aware that an equalization payment could be required if the district court accepted Wife's valuation of HTS, he did not provide the court with a proposed payment schedule. In *Klatt v. Klatt,* 654 P.2d 733, 736 (Wyo. 1982), we upheld the district court's property distribution plan which required the sale of marital property, including property necessary for the husband's business. We said if the husband "had a more workable plan to distribute the property of the marriage, he should have presented it at the trial[.]" *Id.* (citing *Beckle v. Beckle,* 452 P.2d 204, 208-09 (Wyo. 1969), and *Barbour v. Barbour,* 518 P.2d 12, 16 (Wyo. 1974)). *See also, McLoughlin v. McLoughlin,* 996 P.2d 5, 8 (Wyo. 2000) ("an appellant's silence as far as suggesting a more workable plan which would still assure the wife a just and equitable share of the property being distributed, leaves both the trial court and the appellate court without options" (citing *Klatt,* 654 P.2d at 736)). The district court did not abuse its discretion by requiring Husband to make the equity payment to Wife within 120 days of the divorce.

### 3. Judgment Against HTS

[¶22] Husband claims the district court erred by granting a judgment against HTS for the equity payment due Wife. We agree. The only proper parties to a divorce action are "the spouses seeking to be divorced." *Nielson v. Thompson,* 982 P.2d 709, 712 (Wyo. 1999) (citation omitted). *See also, Olsen v. Olsen,* 2011 WY 30, ¶ 14, 247 P.3d 77, 81 (Wyo. 2011). "A judgment against a non-party is a nullity." *Wyoming Health Servs., Inc. v. Deatherage,* 773 P.2d 156, 156 (Wyo. 1989).

### B. Visitation

[¶23] Husband claims the district court's visitation order violated his constitutional rights to parent Child and to freedom of religion. He challenges the following provision of the custody and visitation order: "[Wife] is provided one hour every Sunday when [Child] is with [Husband] so that [Wife] and [Child] can attend a church service together."

[¶24] "Parents have a 'fundamental liberty interest' in the care, custody, and management of the[ir] child." *In re FM,* 2007 WY 128, ¶ 9, 163 P.3d 844, 847 (Wyo. 2007) (citing *Santosky v. Kramer,* 455 U.S. 745, 753, 102 S.Ct. 1388, 1394, 71 L.Ed.2d 599 (1982)). Every citizen also has the right to the freedom of religion. U.S. Const. amend. I ("Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . . ."); Wyo. Const. art. 1 § 18 ("[t]he free exercise and enjoyment of religious profession and worship without discrimination or preference shall be forever guaranteed in this state").

[¶25] Husband did not contest the church provision at any point during the district court proceedings. The provision was not novel to the parties as a similar term was included in the stipulated interim custody and visitation order in place while the divorce was pending. On appeal, however, Husband claims the district court's order includes an unconstitutional "preference" for Wife's religion. We note the district court's order does not refer to Wife's specific religion or indicate in any manner a preference for a particular religion.

[¶26] Furthermore, "'[i]ssues raised for the first time on appeal generally will not be considered by this court unless they are jurisdictional or issues of such a fundamental nature that they must be considered.'" *Gjertsen v. Haar,* 2015 WY 56, ¶ 15, 347 P.3d 1117, 1123 (Wyo. 2015) (quoting *Byrd v. Mahaffey,* 2003 WY 137, ¶ 10, 78 P.3d 671, 674 (Wyo. 2003)). *See also, Fowles v. Fowles,* 2017 WY 112, ¶ 28, 402 P.3d 405, 412 (Wyo. 2017) ("We generally do not consider arguments on appeal that were not presented to the district court.") (citation omitted). The fact that an issue touches on constitutional principles does not necessarily make it so fundamental the waiver rule does not apply. *Gjertsen,* ¶ 15, 347 P.3d at 1123. Husband makes no effort to demonstrate why his argument was not waived and deserves consideration on appeal even though he did not raise it below.

**CONCLUSION**

[¶27]   The district court did not abuse its discretion when it valued Husband's business or ordered him to make the equalization payment to Wife within 120 days of the divorce.  The court, however, erred when it granted a judgment against Husband's business, a nonparty to the divorce proceeding.  Husband waived any challenge to the district court's visitation order allowing Wife to take Child to church during his visitation time.

[¶28]   Affirmed in part, reversed in part, and remanded for modification of the decree to eliminate the judgment against HTS.